STEPHAN E. KYLE (SBN 158075)
KYLE LAW CORPORATION
465 California Street, 5th Floor
San Francisco, CA 94104
Telephone: (415) 839-8100
Facsimile: (415) 839-8189

Attorneys for Plaintiff
JASON EVERETT THOMPSON

# IN THE UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>DEAN GREGORY ASIMOS,<br><br>Debtor. | Case No.: 11-13214-AJ<br><br>Chapter 7<br><br>Adv. Case No. 14-01018 CN<br><br>**FIRST AMENDED ADVERSARY COMPLAINT OF JASON EVERETT THOMPSON** |
| JASON EVERETT THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>DEAN GREGORY ASIMOS,<br><br>Defendant. | Judge: Hon. Charles Novak |

Jason Everett Thompson ("Plaintiff" or "Thompson"), plaintiff, and creditor of the above-named debtor, Dean Gregory Asimos ("Debtor, "Defendant" or "Defendant Asimos") hereby files this First Amended Complaint, and alleges as follows:

**JURISDICTION AND VENUE**

1. This adversary proceeding arises from and relates to the bankruptcy case originally filed pursuant to Chapter 13 of the Bankruptcy Code, and subsequently converted to

one pursuant to Chapter 7, now pending in this Court captioned In re Dean Gregory Asimos, Case No. 11-13214-AJ (the "Case").

2. This Court has jurisdiction over this adversary proceeding pursuant to (i) 28 U.S.C. § 1334, as a civil proceeding arising under the United States Bankruptcy Code or arising in a case commenced under the Bankruptcy Code; and (ii) 28 U.S.C. 157 as a civil proceeding which constitutes a core proceeding.

3. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

4. Plaintiff Jason Everett Thompson was, at all relevant times hereto, a resident of the State of California.

5. Defendant Dean Gregory Asimos was, at all relevant times hereto, a resident of the State of California.

6. The parties are collectively referred to herein as "the Parties."

## GENERAL AVERMENTS

I. **The Pre-Petition Events**

   A. **The Failed Business Relationship and the Contra Costa Superior Court Action**

7. Plaintiff and Defendant were parties to a business relationship from which they both stood to gain. The relationship would enable Plaintiff to benefit from Defendant Asimos' status as a licensed real estate broker by complementing his existing consulting business with commission-based transactions regulated by the Department of Real Estate. Defendant Asimos would benefit from Plaintiff's consulting business in the high-tech industry by exposure to an emerging field of high-tech commercial real estate through Plaintiff's pre-existing business contacts and experience. Such benefits, however, were dependent on both parties fulfilling their contractual obligations.

8. The relationship soured when Defendant Asimos failed to register Plaintiff's business name, Wired Real Estate Group, as a dba with the Department of Real Estate, as he was statutorily required to do. In failing to do so, he compromised not only his own business

Kyle Law Corporation

interests but also those of Plaintiff.

9. The damage that resulted was both foreseeable and inevitable. The refusal of one of Plaintiff's clients to pay a large commission to an unregistered entity was the direct result of Defendant Asimos' failure to perform his fundamental contractual duty as a licensed broker.

10. The dispute over the commission payment resulted in the Parties becoming joint plaintiffs in the action *Dean Asimos dba Wired Real Estate Group v. Astound Broadband, LLC, et al.*, filed on October 23, 2009 in Contra Costa County Superior Court as Case No. C09-02957 (hereinafter, "the Contra Costa County Action"). The Parties ultimately settled the Contra Costa County action and the case was dismissed on June 6, 2011. Very soon thereafter, the settlement funds, net of litigation costs and contingency fees, totaling in excess of $100,000 were deposited into the Trust Account of Carr, McClellan, Ingersoll, Thompson & Horn Professional Law Corporation, the attorneys for the Parties ("Trust Account").

**B.  The Chapter 13 Petition**

11. Debtor Dean Gregory Asimos subsequently filed a voluntary petition for Chapter 13 Bankruptcy in this Court on or about August 29, 2011 (the "Chapter 13 Petition") and the Amended Chapter 13 Plan for which was confirmed by this court on March 2, 2012. Despite being asked specifically about all assets, contingent claims and receivables belonging to him, Debtor failed to notify this Court that he had in fact entered into a Settlement Agreement on May 25, 2011 in the Contra Costa Action for an amount in excess of $100,000 to which Debtor claimed entitlement. Debtor failed to disclose to this Court that the settlement funds from the Contra Costa Action were already sitting in a trust account for the Parties and that Debtor claimed entitlement to those funds.

**II.  Post-Petition Events**

**A.  The San Francisco Superior Court Action**

12. Shortly thereafter, Plaintiff filed the action *Thompson v. Asimos* (San Francisco Superior Court Action No. CGC-11-514980)(hereinafter "the San Francisco Action") against Defendant Asimos on October 11, 2011 alleging various causes of action arising out of the

Kyle Law Corporation

failed business relationship between them, including Trademark Infringement, Unfair Competition (Lanham Act), Unfair Competition (Cal. Bus. & Prof. Code), Injury To Business Reputation, False Description, Breach Of Contract, and Declaratory Relief. Defendant's bankruptcy petition was unknown to Plaintiff at the time of filing the San Francisco Action.

13. Rather than notify Plaintiff and the San Francisco Superior Court of the Chapter 13 Petition in order to invoke the automatic stay, Defendant Asimos instead went on the offense and filed a counter-suit against Plaintiff in the San Francisco Action on November 30, 2011, alleging multiple claims for damages against Plaintiff, including Breach of Contract, Breach of Good Faith and Fair Dealing, Accounting, Fraud and Concealment, and Constructive Trust.

14. On February 15, 2012, in anticipation of the First Case Management Conference in that action, Asimos was required to fill out a case management conference form and, in response to question numbers 12 and 13, to list any related cases or bankruptcy proceedings. Asimos failed to disclose on the form that he had filed for bankruptcy, thereby leading Thompson to believe that he had not filed for bankruptcy. Thompson relied on this material misrepresentation to his detriment in proceeding against Asimos.

15. Subsequently, during discovery, Thompson requested the production of certain bankruptcy related documents (Request For Production Nos. 48 and 49). Asimos responded without objection that any such responsive documents would be produced. When Asimos made production of the requested documents, they contained no bankruptcy related documents at all, thereby again, leading Thompson to believe that Asimos had not yet filed for bankruptcy.

16. Asimos had an affirmative obligation to notify both Thompson and the Superior Court of his already pending bankruptcy, but instead, he filed false and misleading case management statements and discovery responses. For nearly a full year in the San Francisco Action, in reliance on Debtor's failure to disclose any bankruptcy proceedings, Thompson proceeded to litigate the San Francisco Action and defend against Debtor's cross-claims, until the eve of trial and the close of discovery, when finally under oath at his deposition (less than 30 days before trial), Debtor admitted to Thompson's attorney that he had filed for Bankruptcy.

Kyle Law Corporation

17. Upon learning of the bankruptcy, Thompson immediately notified the Trustee and this Court of the pending litigation between the Parties and the more than $100,000 in funds held in trust for the Parties. Per a stipulation filed with this Court and subsequent order, the Parties were granted leave from the Bankruptcy Code's automatic stay and the San Francisco Action proceeded to trial.

18. A bench trial was then held in the San Francisco Action over the course of several days in October of 2012. At trial, Debtor's counsel argued that Debtor was entitled to recover $100,000 against Mr. Thompson. Ultimately, judgment was entered against Defendant Asimos on August 23, 2013. The Court rejected each of the claims alleged by Defendant Asimos in his Cross-complaint and awarded Plaintiff a monetary judgment on his claims in the sum of amount of $450,038 (the "Business Damages Judgment") plus additional attorney's fees and costs in the amount of $181,250 (the "Contract Attorney Fee Award") and court costs in the amount of $9,185.45 (the "Court Cost Award"). The Court also issued a Permanent Injunction against Defendant requiring him to "sign immediately any documents reasonably necessary to effectuate the distribution" to Plaintiff of the settlement monies in the Trust Account stemming from the settlement of the Contra Costa Action (the "Permanent Injunction").

19. A true and correct copy of the Business Damages Judgment is attached hereto as Exhibit A, the Order granting the Contract Attorney Fee Award is attached as Exhibit B, the Memorandum of Costs and Minute Order taxing a portion thereof is attached as Exhibit C, and the Permanent Injunction is attached as Exhibit D.

**B.    The Chapter 7 Conversion and Discharge**

20. Defendant Asimos subsequently converted his Chapter 13 case to one under Chapter 7 on October 10, 2013.

21. This Court entered Defendant Asimos' discharge on May 19, 2014 (the "Discharge") and subsequently closed the main bankruptcy case on June 11, 2014. Asimos' chapter 7 proceeding was determined to be a "no-asset" bankruptcy.

Kyle Law Corporation

Case: 14-01018    Doc# 64    Filed: 07/20/20    Entered: 07/20/20 14:05:07    Page 5 of 11

### III. The Post-Discharge Events

#### A. The Appeals Filed by Asimos and the Contempt Judgment Against Him

22. After the conversion of his bankruptcy case to one under Chapter 7, Defendant Asimos filed an appeal in the California Court of Appeal, First Appellate District on October 23, 2013 (Court of Appeal Case No. A140096), whereby he appealed the Business Damages Judgment and the Contract Attorney Fee Award (the "First Appeal").

23. Rather than rely on the Discharge, Defendant Asimos went back on the offensive in the First Appeal. Defendant Asimos sought affirmative relief in the First Appeal and requested that the Court of Appeal enter judgment "in favor of Asimos on his breach of contract action and his action for an accounting." Plaintiff was required to defend the First Appeal in order to avoid the potential outcome of a money judgment being entered against him by the Court of Appeal, as was being requested by Defendant Asimos.

24. Meanwhile, Defendant Asimos continued to refuse to sign the documentation needed in order to release the settlement monies from the Trust Account to Plaintiff. As a result, Plaintiff was forced to initiate contempt proceedings in the San Francisco Superior Court against Defendant Asimos in August 2015 asserting that Defendant failed to comply with the requirements of the Permanent Injunction.

25. The San Francisco Superior Court entered its judgment of contempt against Defendant Asimos on November 13, 2015, after multiple hearings, and subsequently ordered Mr. Asimos to pay reasonable attorneys' fees in the amount of $62,785.37 to Plaintiff (the "Judgment of Contempt"). A true and correct copy of the Judgment of Contempt and the Order awarding attorneys' fees is attached as Exhibit E.

26. Defendant Asimos then filed a second appeal in the California Court of Appeal, First Appellate District (Court of Appeal Case No. A147960) on March 2, 2016 (the "Second Appeal") arising out of the same trial court action, wherein he appealed the attorney fee award in connection with the Judgment Of Contempt.

27. On December 15, 2016, the California Court of Appeal filed its decision in the

First Appeal, which, among other things, remanded the case to the trial court for a further determination on damages.

28. On February 22, 2017, the California Court of Appeal issued its remittitur in the First Appeal and the decision of the Court became final, thereby restoring the trial court's jurisdiction over the matter such that it could, on remand, render a further determination on damages as well as hear further motions filed by the parties in connection therewith.

29. On June 7, 2017, the trial court entered an order awarding further attorneys' fees to Plaintiff in connection with the First Appeal in the amount of $74,911.50 (the "First Appeal Attorney Fee Award"). The trial court also denied a counter-motion filed by Defendant Asimos for requested attorneys' fees incurred in the First Appeal. A true and correct copy of the Order granting the First Appeal Attorney Fee Award is attached as Exhibit F.

30. On September 5, 2018, the California Court of Appeal filed its decision on the Second Appeal which affirmed the trial court's February 24, 2016 Order. Remittitur was issued on November 16, 2018.

31. On February 1, 2019, the trial court entered an order awarding further attorneys' fees to Plaintiff in connection with the Second Appeal in the amount of $55,808.00 (the "Second Appeal Attorney Fee Award"). A true and correct copy of the Order granting the Second Appeal Attorney Fee Award is attached hereto as Exhibit G.

32. Plaintiff has been unable to take further action in the San Francisco Superior Court to obtain a further determination on damages, as directed by the Court of Appeal in its decision on the First Appeal, in light of the lack of clarity regarding the applicability of the Discharge injunction to the Business Damages Judgment and the Contract Attorney Fee Award which were the subject of the First Appeal.

33. Plaintiff now seeks a determination of nondischargeability or a declaration of rights with respect to the scope of the Discharge with respect to certain debts of Defendant Asimos that have arisen since the filing Chapter 13 Petition, specifically, (1) the Contract Attorney Fee Award, (2) the Court Cost Award, (3) the Judgment of Contempt, (4) the First

Appeal Attorney Fee Award and (5) the Second Appeal Attorney Fee Award.

## FIRST CLAIM FOR RELIEF
### (For a Determination That Asimos' Debt To Thompson Is Not Dischargeable Pursuant to 11 U.S.C. §523(a)(6))

34. Plaintiff incorporates by reference the allegations contained in the above paragraphs as though set forth fully herein.

35. Defendant Asimos willfully, intentionally and maliciously concealed his bankruptcy from Plaintiff for purposes of causing Plaintiff to incur attorneys' fees and court costs in pursuit of a liability Defendant Asimos intended to have discharged in his already pending bankruptcy that he had concealed.

36. Defendant Asimos willfully, intentionally and maliciously prosecuted a cross-action against Plaintiff in the San Francisco Action causing Plaintiff to incur further attorneys' fees in defense of those claims that were not made known by Defendant to the Bankruptcy Trustee.

37. Defendant Asimos willfully, intentionally and maliciously mediated the Parties' disputes in the San Francisco Action with no intention of resolving the disputes in order to further cause Plaintiff to incur unnecessary mediation fees.

38. Defendant Asimos willfully, intentionally and maliciously refused to authorize the release of the undisputed amount of the settlement funds from the Contra Costa County Action for purposes of forcing Plaintiff to incur significant attorneys' fees in an effort to secure release of the undisputed 85% of those funds, including those awarded in the Judgment of Contempt, to which Defendant Asimos admitted Plaintiff was entitled, but which Defendant Asimos maliciously held hostage for purposes of causing economic harm to Plaintiff.

39. Defendant Asimos willfully, intentionally and maliciously filed and prosecuted to conclusion the First Appeal. Rather than rely on the Discharge, Defendant sought instead to obtain an affirmative money judgment in his favor, thereby forcing Plaintiff to incur further significant attorneys' fees defending the First Appeal.

Kyle Law Corporation

40. Asimos willfully, intentionally and maliciously filed and prosecuted to conclusion the Second Appeal in which he appealed the attorney fees awarded to Plaintiff in the Judgment of Contempt, thereby forcing Plaintiff to incur even further significant attorneys' fees defending the Second Appeal.

41. As a result of Defendant Asimos' willful and malicious misconduct, Plaintiff incurred in excess of $375,000 in legal fees and costs between the San Francisco Action, the First Appeal, the Contempt proceedings and the Second Appeal. The entirety of these legal fees were incurred post-petition and the majority of them were incurred post-discharge.

42. Because Defendant Asimos willfully and maliciously caused Plaintiff to incur fees and costs when Defendant was obligated instead to (a) release the undisputed funds to Thompson from the Contra Costa Action and (b) disclose his pending bankruptcy (a material and intentional misrepresentation), the attorneys' fees incurred by Plaintiff and awarded against Defendant in the San Francisco Action are not dischargeable. Further, because Defendant Asimos willfully and maliciously caused Plaintiff to incur fees and costs by (a) prosecuting to conclusion the First Appeal, (b) failing to comply with the Permanent Injunction resulting in the Judgment of Contempt, and (c) prosecuting to conclusion the Second Appeal, the First Appeal Attorney Fee Award, the Judgment of Contempt and the Second Appeal Attorney Fee Award are also not dischargeable.

43. Defendant Asimos' actions were and continue to be both deliberate and malicious. Plaintiff is entitled to have the above-referenced debts determined nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

## SECOND CLAIM FOR RELIEF
### (Declaratory Relief)

44. Plaintiff incorporates by reference each of the allegations contained in the above paragraphs as though set forth fully herein.

45. Defendant's obligations to Plaintiff arising out of Defendant's post-petition conduct were not discharged in the Case, including the Contract Attorney Fee Award, the Court

Cost Award and those obligations arising from the Permanent Injunction and Defendant's pursuit of his cross-action and both appeals against Plaintiff.

46. Plaintiff's obtaining the Contempt Judgment, the First Appeal Attorney Fee Award and the Second Appeal Attorney Fee Award, based on the allegations made therein and any efforts collecting on those items, and any efforts to collect on the Contract Attorney Fee Award and the Court Cost Award, do not violate the discharge injunction of 11 U.S.C. § 524, either individually or collectively.

47. On information and belief, Defendant Asimos disputes the allegations contained in paragraphs 45 and 46 and contends that Plaintiff's obtaining the Contempt Judgment, the First Appeal Attorney Fee Award and the Second Appeal Attorney Fee Award, based on the allegations made therein and any efforts collecting on those items, and any efforts to collect on the Contract Attorney Fee Award and the Court Cost Award, does violate the discharge injunction of 11 U.S.C. § 524.

48. An actual dispute has arisen and now exists by and between Plaintiff and Defendant Asimos as a result of the claims asserted by Plaintiff against Defendant Asimos in the state court proceedings.

49. A judicial declaration and judgment is therefore necessary and appropriate at this time, and under the present circumstances, so that Plaintiff and Defendant Asimos may ascertain their respective rights, duties, and future obligations with respect to the Contract Attorney Fee Award, the Court Cost Award, the Judgment of Contempt, the First Appeal Attorney Fee Award and the Second Appeal Attorney Fee Award.

50. Wherefore, Plaintiff prays for judicial declaration and judgment from the Court as hereinafter set forth.

## PRAYER

WHEREFORE, Plaintiff prays for the entry of judgment against Defendant as follows:

1. That the Court determine that certain debts owed to Plaintiff by Defendant as a result of Defendant's false pretenses and/or false representations and willful and omissions of

material facts upon which Plaintiff relied to its detriment, and as a result of Defendant's willful and malicious actions and resulting injury to Plaintiff, are nondischargeable by virtue of the provisions of 11 U.S.C. §§ 523(a)(6);

2. A declaration that Plaintiff's state court Judgment of Contempt, First Appeal Attorney Fee Award, Second Appeal Attorney Fee Award, Contract Attorney Fee Award and Court Cost Award each do not seek to impose liability on Defendant Asimos for any debt discharged in the Case;

3. A declaration that further prosecution of the San Francisco Action against Defendant Asimos pursuant to the orders and remittitur issued by the California Court of Appeal in the First Appeal and Second Appeal, and the subsequent orders of the trial court in the San Francisco Action, including obtaining a final judgment therein and collecting on that judgment, does not violate the discharge injunction;

4. For an award of attorneys' fees as allowable by law in an amount the Court determines to be reasonable;

5. For costs of suit herein incurred; and

6. For such other and further relief as this Court deems just and proper.

DATED: July 20, 2020

                                          KYLE LAW CORPORATION

                                          By /s/ Stephan E. Kyle
                                          Stephan E. Kyle, Esq.
                                          Attorneys for Jason Everett Thompson