STEPHAN E. KYLE (SBN 158075)
KYLE LAW CORPORATION
465 California Street, 5th Floor
San Francisco, CA 94104
Telephone: (415) 839-8100
Facsimile: (415) 839-8189

Attorneys for Plaintiff
JASON EVERETT THOMPSON

IN THE UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>DEAN GREGORY ASIMOS,<br><br>　　　　Debtor.<br><br>―――――――――――<br><br>JASON EVERETT THOMPSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DEAN GREGORY ASIMOS,<br><br>　　　　Defendant. | Case No.: 11-13214-AJ<br><br>Chapter 7<br><br>Adv. Case No. 14-01018 CN<br><br>**OPPOSITION BRIEF OF JASON EVERETT THOMPSON TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　November 4, 2020<br>Time:　　11:00 a.m.<br>Location:　99 South E Street<br>　　　　　Santa Rosa, California<br><br>Judge:　　Hon. Charles Novak |

　　　　Jason Everett Thompson ("Plaintiff" or "Thompson"), plaintiff, and creditor herein, hereby submits the following brief in opposition to the motion for summary judgment (the "Asimos Motion"), filed by debtor and defendant, Dean Gregory Asimos ("Debtor, "Defendant" or "Defendant Asimos") (Adv. D.I. 76).

-1-
IN RE: DEAN GREGORY ASIMOS
ADV. CASE NO. 14-01018 CN

## I. SUMMARY OF ARGUMENT

In order to succeed on his motion for summary judgment, Defendant needs to establish that the undisputed facts conclusively show, as a matter of law, both of the following: (1) That Plaintiff's claims are "pre-petition" in nature under the "fair contemplation" doctrine even though the claims relate to Defendant Asimos' "post-petition" conduct; **and** (2) that Plaintiff's claims are not otherwise nondischargeable under Section 523(a)(6) in light of the alleged conduct of Defendant Asimos. Defendant has not fully established either, let alone both, of these required showings.

First, Defendant fails to establish that Plaintiff should have "reasonably contemplated" all of the following:

(i) That Defendant would sue him in the state court action claiming damages and attorneys' fees using the same contract that Defendant now claims he was freed of any obligations under, thereby forcing Plaintiff to incur nearly $200,000 in attorneys' fees and costs as evidenced by the Contract Attorney Fee Award and the Court Cost Award;[1]

(ii) That Defendant would continue his assault on Plaintiff *after the Discharge* by litigating to conclusion the First Appeal, thereby forcing Plaintiff to incur another $74,911.50 as evidenced by the First Appeal Attorney Fee Award;

(iii) That Defendant would *knowingly and willfully* fail to execute, ***after the Discharge***, the documentation required of him pursuant to the Permanent Injunction, thereby forcing Plaintiff to file and prosecute the Contempt Proceedings against Defendant, resulting in an additional $62,785.37 in attorneys' fees (awarded pursuant to Code of Civil Procedure §

---

[1] Except as otherwise defined herein, capitalized terms shall have the meaning set forth in the Joint Stipulation of Facts in Support of Cross-Motions for Summary Judgment ("JSF") submitted in connection with these motions (Adv. D.I. 73-2).

Kyle Law Corporation

1218(a)) as evidenced by the Judgment of Contempt; or

(iv) That Defendant would continue further by litigating to conclusion the Second Appeal, thereby forcing Plaintiff to incur another $55,808.00 in attorneys' fees (also awarded pursuant to Code of Civil Procedure § 1218(a)) as evidenced by the Second Appeal Attorney Fee Award.

Likewise, Defendant Asimos equally fails to establish that his post-petition conduct does not rise to the level required by Section 523(a)(6) such that Plaintiff's claims are otherwise nondischargeable. The San Francisco Superior Court held multiple hearings during the course of the Contempt Proceedings and reached the binding and conclusive determination that Defendant was guilty, beyond a reasonable doubt, of contempt of court, based on the finding that Plaintiff "had knowledge of the Permanent Injunction, was able to comply at the of the Permanent Injunction and continued to have such ability, and willfully failed to comply with the Permanent Injunction." These findings and rulings of the superior court are binding on Defendant. He is not permitted to re-litigate them in this proceeding.

## II. ARGUMENT

### A. Defendant Asimos' Conduct Did Not Fall Within the "Fair Contemplation" of the Parties.

#### 1. Unlike Asimos, None of the Debtors in the Cases Cited by Defendant Sought Affirmative Relief Against the Creditor

Defendant Asimos cites to several cases decided within the Ninth Circuit for the general proposition that attorneys' fees stemming from a pre-petition contract fall within the "fair contemplation" of the parties and are therefore subject to the Discharge. *See, e.g., Picerne Construction Corp., DBA Camelback Construction v. Castellino Villas,* 836 F.3d 1028 (9th Cir. 2016); *Baroni v. Wells Fargo Bank, N.A.*, 558 B.R. 916 (C.D. Cal. 2016); *In re SNTL Corp.,* 571 F.3d 826 (9th Cir. 2009); *Cal. Dep't of Health Servs. v. Jensen,* 995 F.2d 925 (9th Cir. 1993).

Kyle Law Corporation

Case: 14-01018    Doc# 79    Filed: 10/21/20    Entered: 10/21/20 16:20:45    Page 3 of 10

[Asimos Motion at 7:19 – 10:28].

Plaintiff respectfully submits that none of these cases are implicated here because none of the debtors in those cases exhibited the same level of affirmative litigation conduct as did Defendant Asimos. In fact, the debtor in each of those cases merely engaged in ***defensive*** conduct in an attempt to preclude liability against him or her. Defendant Asimos, on the other hand, engaged in affirmative conduct that clearly amounted to a "whole new course of litigation." *See, Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 533- 34 (9th Cir. 1998); *see also*, *In re Ybarra,* 424 F.3d 1018, 1024 (9th Cir. 2005).

By way of example, in one of the cases cited by Defendant, *In re Castellino Villas,* the property owner (Castellino) filed its Chapter 11 petition after an arbitration award in favor of the general contractor (Picerne) was confirmed in the superior court. In a subsequent state court action in which Picerne sought to enforce a mechanics lien on the property, Castellino (the debtor) merely pursued its defenses in the mechanics lien action. Castellino did not seek to impose contractual liability under the pre-petition construction agreement against Picerne.

Notably, Picerne attempted to characterize Castellino's litigation conduct as "more than simply seeking to extricate itself from the state court litigation" in an effort to bring its attorney fee claim within the *Siegel* and *Ybarra* exception to the fair contemplation doctrine. *In re Castellino* at 1036. To that end, Picerne pointed out that Castellino "brought a motion for summary judgment, opposed Picerne's motion for summary judgment, took party and non-party discovery, and made a request for attorneys' fees" *Id.* In light of that limited post-petition conduct of Castellino, the Court found that Castellino's conduct did not a reach the level of "affirmative action to commence what amounts to 'a whole new course of litigation'" such that *Ybarra* and *Siegel* would be implicated. *Id.* at 1035-1036 (citing *Siegel,* 143 F.3d at 534).

By clear contrast, unlike the property owner/debtor in *Castellino*, Defendant Asimos did

-4-
IN RE: DEAN GREGORY ASIMOS
ADV. CASE NO. 14-01018 CN

Case: 14-01018    Doc# 79    Filed: 10/21/20    Entered: 10/21/20 16:20:45    Page 4 of 10

[Asimos Motion at 7:19 – 10:28].

Plaintiff respectfully submits that none of these cases are implicated here because none of the debtors in those cases exhibited the same level of affirmative litigation conduct as did Defendant Asimos. In fact, the debtor in each of those cases merely engaged in ***defensive*** conduct in an attempt to preclude liability against him or her. Defendant Asimos, on the other hand, engaged in affirmative conduct that clearly amounted to a "whole new course of litigation." *See, Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 533- 34 (9th Cir. 1998); *see also*, *In re Ybarra,* 424 F.3d 1018, 1024 (9th Cir. 2005).

By way of example, in one of the cases cited by Defendant, *In re Castellino Villas,* the property owner (Castellino) filed its Chapter 11 petition after an arbitration award in favor of the general contractor (Picerne) was confirmed in the superior court. In a subsequent state court action in which Picerne sought to enforce a mechanics lien on the property, Castellino (the debtor) merely pursued its defenses in the mechanics lien action. Castellino did not seek to impose contractual liability under the pre-petition construction agreement against Picerne.

Notably, Picerne attempted to characterize Castellino's litigation conduct as "more than simply seeking to extricate itself from the state court litigation" in an effort to bring its attorney fee claim within the *Siegel* and *Ybarra* exception to the fair contemplation doctrine. *In re Castellino* at 1036. To that end, Picerne pointed out that Castellino "brought a motion for summary judgment, opposed Picerne's motion for summary judgment, took party and non-party discovery, and made a request for attorneys' fees" *Id.* In light of that limited post-petition conduct of Castellino, the Court found that Castellino's conduct did not a reach the level of "affirmative action to commence what amounts to 'a whole new course of litigation'" such that *Ybarra* and *Siegel* would be implicated. *Id.* at 1035-1036 (citing *Siegel,* 143 F.3d at 534).

By clear contrast, unlike the property owner/debtor in *Castellino*, Defendant Asimos did

Kyle Law Corporation

not merely seek to extricate himself from the contractual liability that he ultimately received a discharge of.  Instead, Defendant Asimos affirmatively sued Plaintiff for Breach of Contract, Breach of Good Faith and Fair Dealing, Accounting, Fraud and Concealment, and Constructive Trust in connection with their pre-petition contract by way of his cross-complaint, and litigated those claims all the way through judgment.  [JSF ¶¶ 6, 11, Exhibits 2 and 3].  Certainly, if Defendant Asimos had been successful on his cross-complaint, he would have been entitled to recover his attorneys' fees against Plaintiff pursuant to the pre-petition contract.  Accordingly, the *Ybarra* and *Siegel* line of cases control here.  Defendant Asimos should not be allowed to use that same contract as a shield to avoid responsibility for the fees (the Contract Attorney Fee Award) that he forced Plaintiff to incur defending against his cross-complaint at trial.

Not only was Plaintiff required to defend himself at trial, Defendant Asimos continued to pursue affirmative relief against Plaintiff after judgment was entered, by filing and prosecuting the First Appeal, despite the fact that he had received a discharge under Chapter 7.  He then forced Plaintiff to incur further fees and costs by refusing to execute the Authorization, as he was required to do under the Permanent Injunction.  This resulted in Defendant Asimos being adjudged guilty of contempt of court, beyond a reasonable doubt, after five (5) separate hearings on the issues.  This knowing and intentional conduct caused Plaintiff to incur over $60,000 in attorneys fees and costs simply to obtain Defendant's signature on the Authorization.  When he lost, Defendant Asimos still kept fighting, seeking to have the Contempt Judgment overturned by way of the Second Appeal, forcing Plaintiff to incur even further fees.

### 2. Not All of The Attorneys' Fees and Costs At Issue Are Related to the Pre-Petition Contact

Each of the cases cited by Defendant also involve claims for attorneys' fees that arise out of a prevailing party provision in a pre-petition contract.  However, not all of the attorneys'

fees and costs awarded to Plaintiff in the present dispute were contractual attorneys' fees. Specifically, the Contempt Judgment attorney fee award and the Second Appeal Attorney Fee Award were **not** based on the attorneys' fee provision in the pre-petition contract between the parties. Rather, those fees were awarded pursuant to California Code of Civil Procedure § 1218(a) which provides: "[A] person who is subject to a court order as a party to the action, or any agent of this person, who is adjudged guilty of contempt for violating that court order may be ordered to pay to the party initiating the contempt proceeding the reasonable attorney's fees and costs incurred by this party in connection with the contempt proceeding." [JSF ¶¶ 25, 30, Exhibits 10, 11 and 12].

As such, at least with respect to the Contempt Judgment and the Second Appeal Attorney Fee Award, none of the cases cited by Defendant Asimos are applicable. Defendant Asimos' post-Discharge conduct that resulted in the Contempt Judgment and the Second Appeal Attorney Fee Award could not, under any stretch of the imagination, have been "fairly contemplated" by Plaintiff at any time.

> **B.** **Defendant Asimos Has Not Established, as a Matter of Law, That His Conduct Did Not Result in a Willful and Malicious Injury to Plaintiff**
>
> > **1.** **Defendant Asimos is Bound by The Actions of His Counsel**

Defendant Asimos contends "Plaintiff cannot establish that Asimos ever possessed the subjective motive to injure Plaintiff" and that Asimos' post-petition litigation conduct does not rise to the level of a willful or malicious injury to Plaintiff. [Asimos Motion at 4:18-21]. In support, Defendant Asimos claims that his attorney Jessica Barsotti failed to provide him with various updates in the case and that, consequently, "[t]hroughout most of the of state court lawsuit, Asimos was unaware of the actions that Barsotti was taking and simply was informed that it would be taken care of during the appeal and that the appellate court would fix the errors

of the Superior Court judge that presided over the bench trial." [Asimos Motion at 12:28 – 13:4].

Defendant Asimos cites several cases for the proposition that "Courts have generally recognized that a party's reliance on the advice of his or her counsel can negate an otherwise intentional aspect of an act or position taken by the represented party." *See e.g.*, *Robinson v. Worley*, 848 F.3d 577, 586 (4th Cir. 2017); *Retz v. Samson*, 606 F.3d. 1189 (9th Cir. 2010); *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir. 1986); *Nunez v. Pennisi*, 241 Cal. App. 4th 861 (2015). [Asimos Motion at 11:9-18]. Defendant's reliance on these cases is misplaced.

For instance, in *Robinson v. Worley*, while it is true that the Court stated that a party's reliance on the advice of his or her counsel **_can_**, generally, absolve a debtor of fraudulent intent, the Court went on to state that "the bankruptcy court must still consider whether the debtor acted in good faith." *Robinson* at 586. The *Robinson* Court specifically held that "a debtor must demonstrate that he provided the attorney with all of the necessary facts and documentation." *Id.* Defendant Asimos has made no such showing here nor, as set forth further below, can he.

### 2. Defendant Asimos' Own Words Contradict His Statement that He Was Not Aware of Attorney Barsotti's Conduct

Defendant Asimos' asserted lack of knowledge is belied by his own words to Hon. Teri L. Jackson during the Contempt Proceedings on February 4, 2016, in which he clearly admitted that he knew about, and approved of, the conduct of his attorney in the state court proceedings. [Reporter's Transcript of Proceedings – Motions, February 4, 2016 ("Contempt Transcript") at 18:8 – 22:25, attached as Exhibit 14 to the Second Declaration of Stephan E. Kyle ("Second Kyle Decl.") submitted herewith and incorporated herein by reference].

**Importantly, at no time during this lengthy statement to the Superior Court did**

**Defendant Asimos ever assert or proclaim, in an attempt to avoid the *mens rea* determination necessary to contempt liability, that he had not been kept abreast of his lawyer's actions in the state court proceedings.** Instead, Defendant Asimos admitted his knowledge and intent, as follows:

> MR. ASIMOS:
>
> \*\*\*
>
> I have been in this litigation with the plaintiff for over five years. I've waited over two years in the appeal -- Court of Appeal to get an answer.
>
> \*\*\*
>
> When I first stepped into an office here in San Francisco in November of 2009, I've dealt with this plaintiff for all of these years who has created fraud against me, and the judgment that was rendered was unfair. That's why it's in the Court of Appeals.
>
> \*\*\*
>
> The plaintiff, as a matter of record, stated two years after leaving working under my broker's license that his gross revenues for Wired Real Estate Group was $100 million. The previous year -- and this is all in writing. 880,000 in 2011. When he was with me for two years, he generated a couple of deals that maybe gave me a few thousand dollars.
>
> \*\*\*
>
> I have not been treated fairly by this Court in my opinion and with all due respect, nor by the previous judge who heard the case, and I am praying against all hope that the Court of Appeals finds in my favor because this is a major travesty and miscarriage of justice.
>
> \*\*\*
>
> [A]lso, if the brief was read, and Mr. Kyle knows what's in the brief. He knows that his client deposited over $500,000 in undisclosed deposits, which is sitting in front of the Court of Appeal right now into a Wells Fargo account when he was working as an agent of mine. All of this was disregarded.
>
> \*\*\*
>
> I filed this appeal in November of 2013, and I've been waiting patiently. I was in front of Judge Douglass, and I don't know if Mr. Kyle is also stating or telling you or if you understand that Judge Douglass – Judge Douglass is the one who asked me to sign it and said he would hear me again and give me an opportunity to sign the

Kyle Law Corporation

document.

\*\*\*

I signed the document, and I added that language because I felt I was being treated unfairly. Simple as that. There was no major intent to injure or hurt anyone. I earned that money from Mr. Thompson and for myself at an 85/15 split in favor of Mr. Thompson.

\*\*\*

I was hoping that this Court was going to see this contempt and wait until the Court of Appeals can run its course. Judge Jaroslovsky, Northern District, he was the bankruptcy judge. And Mr. Kyle knows because he has the motion. And he agreed we can't even go forward with the adversary proceeding because his client is attacking me in bankruptcy court. My constitutional right to file bankruptcy, and he's besmirching my reputation, my character, my integrity, and I've sat here.

Contempt Transcript at 18:13 – 22:15.

### 3. Defendant Asimos Knew That Plaintiff Was Forced to Initiate and Prosecute Contempt Proceedings Against Him

Defendant Asimos also misrepresents his level of knowledge regarding the Contempt Proceedings filed against him. Specifically he states: "I was unaware that the Plaintiff was pursuing a contempt proceeding against me as Barsotti did not immediately disclose that fact to me." (Declaration of Dean Asimos (Adv. D.I. 76-2) at ¶ 28.) This statement is also belied by the evidence. Defendant Asimos was, in fact, placed on notice on July 30, 2015 that Plaintiff intended to file contempt proceedings if he did not provide the original signed Authorization required by the Permanent Injunction. Plaintiff's counsel sent this notice not only to attorney Barsotti, ***but also sent a copy of this letter to Defendant Asimos' counsel in this case, Joseph Angelo.*** [*See*, July 30, 2015 Letter to Jessica R. Barsotti, Esq., which is copied to Joseph Angelo, Esq., attached as Exhibit 15 to the Second Kyle Decl.]. Certainly Defendant Asimos does not contend that Mr. Angelo also failed to advise him of the threatened contempt proceedings.

//

//

//

Case: 14-01018    Doc# 79    Filed: 10/21/20    Entered: 10/21/20 16:20:45    Page 9 of 10

### 4. Discovery of Asimos' Attorney Jessica Barsotti Has Not Yet Been Conducted

Regardless, even if the Court is persuaded that Defendant Asimos may properly invoke the advice of counsel defense in connection with the Section 523(a)(6) claim against him, his motion for summary judgment should be denied at this time, or a decision postponed until the parties have had the opportunity to obtain third-party discovery from attorney Barsotti to investigate whether she actually acted as a "lone wolf," as Defendant Asimos contends.

## III. CONCLUSION

For the foregoing reasons, Defendant Asimos cannot establish, as a matter of law, that Plaintiff's claims related to the Contract Attorney Fee Award, the Court Cost Award, the First Appeal Attorney Fee Award, the Contempt Judgment or the Second Appeal Attorney Fee Award were all "fairly contemplated" by Plaintiff as would be required to include such claims within the scope of the Discharge. Similarly, Defendant's asserted lack of knowledge of his attorney's litigation conduct is belied by the evidence before this Court.

Accordingly, Plaintiff respectfully requests that Defendant Asimos' motion for summary judgment be denied.

Respectfully submitted,

DATED: October 21, 2020

KYLE LAW CORPORATION

By /s/ Stephan E. Kyle
Stephan E. Kyle, Esq.
Attorneys for Jason Everett Thompson