STEPHAN E. KYLE (SBN 158075)
KYLE LAW CORPORATION
465 California Street, 5th Floor
San Francisco, CA 94104
Telephone: (415) 839-8100
Facsimile: (415) 839-8189

Attorneys for Plaintiff
JASON EVERETT THOMPSON

IN THE UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br>DEAN GREGORY ASIMOS,<br>Debtor. | Case No.: 11-13214-AJ<br>Chapter 7<br>Adv. Case No. 14-01018 CN<br>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF JASON EVERETT THOMPSON** |
| JASON EVERETT THOMPSON,<br>Plaintiff,<br>v.<br>DEAN GREGORY ASIMOS,<br>Defendant. | Date: November 4, 2010<br>Time: 11:00 a.m.<br>Location: 99 South E Street<br>Santa Rosa, California<br>Judge: Hon. Charles Novak |

Jason Everett Thompson ("Plaintiff" or "Thompson"), plaintiff, and creditor of the above-named debtor, Dean Gregory Asimos ("Defendant" or "Asimos") hereby submits the following reply memorandum in support of his motion for summary judgment (Adv. D.I. 73)(the "Motion"), for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Fed. R. Civ. P."), as incorporated herein pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), granting summary judgment against the

Defendant Asimos and rendering a determination of nondischargeability or a declaration that certain debts of Defendant Asimos, as set forth in the Motion, that have arisen since the filing Chapter 13 Petition are not subject to the discharge order.

## I. SUMMARY OF ARGUMENT

Defendant Asimos' Opposition to Plaintiff's Motion for Summary Judgment (Adv. D.I. 81)(the "Opposition") fails to acknowledge his own affirmative litigation conduct that has forced Plaintiff to incur hundreds of thousands of dollars in attorneys' fees and costs in defense. Defendant seeks to rely on the Discharge to preclude Plaintiff from recovering on any of his claims, by taking a broad-brush approach to the "fair contemplation" doctrine. Although not specifically articulated, Defendant Asimos seems to argue that the Contract Attorney Fees Award, Court Costs Award and First Appeal Attorney Fee Award[1], which were awarded pursuant to the prevailing party attorneys' fee provision in the prepetition contract between the parties, each fall within the "reasonable contemplation" of the Plaintiff at the time Asimos filed his bankruptcy petition. As set forth in the moving papers, and as further detailed below, Plaintiff could not have reasonably contemplated Defendant Asimos' affirmative litigation conduct that resulted in the damages Plaintiff seeks to recover.

Regardless, Defendant Asimos has not made any attempt in the Opposition to address the Contempt Judgment and the Second Appeal Attorney Fee Award. Neither of those claims arose out of the prepetition contract between the parties. Rather, both of those claims arose out of Defendant Asimos' post-Discharge willful and intentional refusal to comply with the Permanent Injunction against him that led to an award of attorneys' fees against him under Code of Civil Procedure § 1218(a).

Finally, Defendant Asimos' argument that he should not be held responsible for his post-petition litigation conduct because he did not know about the actions of his lawyer lacks credibility in light of the specific evidence to the contrary.

---

[1] Except as otherwise defined herein, capitalized terms shall have the meaning set forth in the Joint Stipulation of Facts in Support of Cross-Motions for Summary Judgment ("JSF") submitted in connection with these motions (Adv. D.I. 73-2).

## II. ARGUMENT

### A. The Undisputed Facts Support A Determination That Plaintiff's Claims Were Not Discharged.

#### 1. The "Fair Contemplation" Doctrine Does Not Provide a Shield Against Plaintiff's Recovery of Post-Petition Attorneys' Fees Caused By Asimos' Pursuit Of A "Whole New Course of Litigation" Against Plaintiff.

Defendant Asimos does not contend that an issue of material fact exists so as to prevent a determination on Plaintiff's Declaratory Judgment cause of action. Indeed, the parties submitted a Joint Stipulation of Facts for the Court to consider with respect to the Motion. Instead, Defendant Asimos argues only that the jointly-submitted facts support an opposite conclusion. He argues in favor of application of the "general rule" in the Ninth Circuit that attorneys' fees stemming from a pre-petition contract fall within the "fair contemplation" of the parties and are therefore subject to the Discharge. *See, e.g., Picerne Construction Corp., DBA Camelback Construction v. Castellino Villas,* 836 F.3d 1028 (9th Cir. 2016); *Baroni v. Wells Fargo Bank, N.A.*, 558 B.R. 916 (C.D. Cal. 2016); *In re SNTL Corp.,* 571 F.3d 826 (9th Cir. 2009); *Cal. Dep't of Health Servs. v. Jensen,* 995 F.2d 925 (9th Cir. 1993). [Opposition at 3:11 – 4:16].[2]

In making this argument, Defendant Asimos wholly glosses over his affirmative litigation conduct in the state court proceedings that caused Plaintiff to incur hundreds of thousands of dollars defending against Asimos' claims and appeals. In fact, the cases cited by Defendant Asimos are plainly distinguished on their facts because none of the debtors in those cases exhibited the same level of affirmative litigation conduct as did Defendant Asimos. In fact, the debtor in each of those cases merely engaged in ***defensive*** conduct in an attempt to

---

[2] Defendant Asimos makes an identical argument in support of his cross-motion for summary judgment. (Adv. D.I. 76). Plaintiff addresses the case law cited and arguments made by Defendant Asimos by way of his Opposition filed on October 21, 2020 (Adv. D.I. 79), which is incorporated herein by reference.

-3-
IN RE: DEAN GREGORY ASIMOS
ADV. CASE NO. 14-01018 CN

preclude liability against him or her. Defendant Asimos, on the other hand, engaged in affirmative conduct that clearly amounted to a "whole new course of litigation." *See, Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 533- 34 (9th Cir. 1998); *see also*, *In re Ybarra,* 424 F.3d 1018, 1024 (9th Cir. 2005).

In addition to the cases mentioned above, Defendant Asimos also relies on the case of *Baroni v. Wells Fargo Bank, N.A.,* 558 B.R. 916 (C.D. Cal September 30, 2016) asserting, incorrectly, that "the court recognized that the Ninth Circuit's 'return to the fray' exception is narrow and that a court cannot carve out post-petition attorney's fees from a discharge if the conduct is related to the underlying, pre-petition action. Id., 558 B.R. at 929." (Opposition at 4:19-24). The *Baroni* court did not, as Defendant Asimos asserts, articulate a blanket prohibition against recovery of post-petition attorneys' fees that relate to a pre-petition action. In fact, the *Baroni* court specifically recognized the distinction between the post-petition adversary proceeding filed by the debtor in that case and the type of conduct exhibited by Defendant Asimos in the state court proceedings, as follows:

> While it is true that Allana's post-confirmation litigation was styled as an adversary proceeding, and sought affirmative relief in addition to disallowance of Wells' Fargo's claim, the gravamen of the complaint was that Wells Fargo did not have standing to enforce its mortgage debt against Allana or the Henderson property.

*Baroni* at 929.

In a transparent attempt to liken his situation to that of the debtor in *Baroni,* Defendant Asimos misrepresents his involvement in the state court litigation. Specifically, in the Opposition, Defendant Asimos incorrectly states that he "did not file a new lawsuit against Plaintiff or seek to engage in any unrelated and new litigation outside the scope of the pre-petition complaint." (Opposition at 6:1-2). Asimos continues: "While some post-filing discovery and motion work was done, the Ninth Circuit in Camelback recognized that type of

activity behavior fell within the ambit of what was "fair contemplation" and allowed for the discharge of the debt and subsequent attorneys' fees that were incurred. Id. at 1036." (Opposition at 6:2-5). Asimos' characterization of his involvement is belied by the evidence before this Court. Asimos did not merely participate in some "post-filing discovery and motion work." Rather, the jointly submitted undisputed facts clearly reflect that Asimos affirmatively sued Plaintiff for Breach of Contract, Breach of Good Faith and Fair Dealing, Accounting, Fraud and Concealment, and Constructive Trust in connection with their pre-petition relationship by way of his cross-complaint, and litigated those claims all the way through judgment. [JSF ¶¶ 6, 11, Exhibits 2 and 3]. By clear contrast, unlike the debtor in *Baroni*, Defendant Asimos did not merely seek to extricate himself from the contractual liability that he ultimately received a discharge of. He sought to ***impose*** liability on Plaintiff. He also sought to recover all of his contractual attorneys' fees against Plaintiff. After months of intense litigation, judgment was entered against him in the San Francisco Action on these claims. Defendant Asimos should not be permitted here to use the Discharge as a "sword" to undertake risk-free post-petition litigation at Plaintiff's expense. Certainly, if Defendant Asimos had been successful on his cross-complaint, he would have been entitled to recover his attorneys' fees against Plaintiff pursuant to the pre-petition contract. Accordingly, the *Ybarra* and *Siegel* line of cases control here. Defendant Asimos should not be allowed to use that same contract as a shield to avoid responsibility for the Contract Attorney Fee Award and the Court Cost Award, both of which he forced Plaintiff to incur defending against Asimos' cross-complaint at trial.

  **2.**  **Plaintiff Could Not Have Reasonably Contemplated That Defendant Asimos Would Continue His Affirmative Litigation Conduct, Post-Discharge, In An Attempt to Impose Liability Against Plaintiff By Way Of The First Appeal**

Not only was Plaintiff required to defend himself at trial, Defendant Asimos continued

Kyle Law Corporation

to pursue affirmative relief against Plaintiff after judgment was entered, by filing and prosecuting the First Appeal, despite the fact that he had received a Discharge under Chapter 7.

If Defendant Asimos intended to rely upon the Discharge to avoid legal responsibility for the Contract Attorney Fee Award and the Court Cost Award, as he attempts to do now, he had no rational grounds to file and prosecute the First Appeal. Defendant Asimos' motivation for the First Appeal is clearly illustrated by the factual and procedural record before this Court. Defendant Asimos was not seeking merely to avoid liability for state court judgment against him. Rather, as set forth in the Motion and as detailed in the admission of Asimos himself further below, Defendant Asimos affirmatively prosecuted the First Appeal against Plaintiff in an attempt to recover on his own pre-petition claims.

This affirmative conduct on appeal forced Plaintiff to incur over $70,000 in fees which were awarded to him by way of the First Appeal Attorney Fee Award. The record on this point is clear. Defendant Asimos made the decision to pursue the First Appeal against Plaintiff, even though he had received a Discharge in this Court. In so doing, Defendant Asimos clearly "returned to the fray." Plaintiff is entitled to a declaration that the First Appeal Attorney Fee Award is not subject to the Discharge.

### 3. The Contempt Proceedings and Second Appeal Could Not Have Been "Fairly Contemplated" By Plaintiff

Defendant Asimos continued to cause damage to Plaintiff by refusing to execute the Authorization, as he was required to do under the Permanent Injunction, thereby forcing Plaintiff to incur even further attorneys' fees and costs. This refusal required the filing of Contempt proceedings against Defendant Asimos and resulted in him being adjudged guilty of contempt of court, beyond a reasonable doubt, after five (5) separate hearings on the issues. This knowing and intentional conduct caused Plaintiff to incur over $60,000 in attorneys' fees and costs simply

Kyle Law Corporation

to obtain Defendant's signature on the Authorization. When he lost, Defendant Asimos still kept fighting, seeking to have the Contempt Judgment overturned by way of the Second Appeal, forcing Plaintiff to incur in excess of $50,000 more in attorneys' fees.

The Contempt Judgment and the Second Appeal Attorney Fee Award both resulted from Defendant Asimos' post-Discharge willful and intentional conduct which was wholly unrelated to the pre-petition business relationship between the parties. On these claims in particular, the case law relied upon by Defendant is inapplicable. Each of the cases cited with respect to the "fair contemplation" doctrine involve claims for attorneys' fees that arise out of a prevailing party provision in a pre-petition contract. However, the Contempt Judgment attorney fee award and the Second Appeal Attorney Fee Award were **not** based on the attorneys' fee provision in the pre-petition contract between the parties. Rather, those fees were awarded pursuant to California Code of Civil Procedure § 1218(a) which provides: "[A] person who is subject to a court order as a party to the action, or any agent of this person, who is adjudged guilty of contempt for violating that court order may be ordered to pay to the party initiating the contempt proceeding the reasonable attorney's fees and costs incurred by this party in connection with the contempt proceeding." [JSF ¶¶ 25, 30, Exhibits 10, 11 and 12].

Defendant Asimos has made no attempt in his Opposition to address the factual and procedural differences presented by the Contempt Judgment and the Second Appeal Attorney Fee Award. None of the cases cited by Defendant Asimos have any bearing on these claims. Defendant Asimos' post-Discharge conduct that resulted in the Contempt Judgment and the Second Appeal Attorney Fee Award could not, under any stretch of the imagination, have been "fairly contemplated" by Plaintiff at any time.

Accordingly, Plaintiff is entitled to a declaration that the Contempt Judgment and the Second Appeal Attorney Fee Award are not subject to the Discharge.

### B. Even If The Court Determines That Plaintiff's Claims Are Otherwise Subject to the Discharge, Defendant Asimos' Adjudged Willfulness And Admissions Render Plaintiff's Claims Non-Dischargeable Pursuant to Section 523(a)(6)

#### 1. Defendant Asimos Ignores The Contempt Judgment Against Him

In the Opposition, Defendant asserts that the facts "do not support a finding of willfulness and maliciousness." (Opposition at 6:19-25). In making this assertion, Defendant Asimos completely ignores the express findings made by the San Francisco Superior Court against him following five (5) separate hearings during the course of the Contempt proceedings. The issue regarding Defendant Asimos' willful and malicious conduct was presented to the Superior Court and the Court made the express finding, after consideration of all of the evidence submitted in the Contempt proceedings, that Defendant Asimos was guilty of contempt of court, ***beyond a reasonable doubt,*** and that he "had knowledge of the Permanent Injunction, was able to comply at the time of the Permanent Injunction and continued to have such ability, ***and willfully failed to comply with the Permanent Injunction.***" [JSF ¶ 25; Exhibit 10 at p. 2]. Such findings made by the trial court clearly illustrate that Defendant Asimos' conduct caused a willful and malicious injury to Plaintiff.

#### 2. Defendant Asimos Knew About, And Authorized, The Conduct Of His State Court Attorney

Defendant Asimos' attempt to hide behind, and place the blame on, his state court attorney at this late hour does not raise a triable issue of material fact sufficient to overcome the properly supported Motion before this Court. (Opposition 11:17 – 14:10). First, Defendant Asimos never raised any issue with his state court attorney in any of the proceedings up to this point. Indeed, even when he was faced with a potential judgment of civil contempt against him, Asimos did not assert that his lawyer failed to keep him informed or advise him on what he was legally required to do. Asimos had the opportunity to raise this defense when he addressed the Superior Court directly in the Contempt proceedings. Asimos' own words to the Superior Court are telling. Rather than explain to the Court that his lawyer had "kept him in the dark" or that "he had no understanding of what he was required to do," as he now claims, Asimos instead articulated that he fully knew and understood the nature of the proceedings he had initiated and

Kyle Law Corporation

that he believed that Plaintiff was still liable to him for damages. [Reporter's Transcript of Proceedings – Motions, February 4, 2016 ("Contempt Transcript") at 18:8 – 22:25, attached as Exhibit 14 to the Third Declaration of Stephan E. Kyle ("Third Kyle Decl.") submitted herewith and incorporated herein by reference]. At the February 4, 2016 hearing in the Contempt proceedings, Defendant Asimos stated, in open court, as follows:

> MR. ASIMOS:
>
> \*\*\*
>
> I have been in this litigation with the plaintiff for over five years. I've waited over two years in the appeal -- Court of Appeal to get an answer.
>
> \*\*\*
>
> When I first stepped into an office here in San Francisco in November of 2009, I've dealt with this plaintiff for all of these years who has created fraud against me, and the judgment that was rendered was unfair. That's why it's in the Court of Appeals.
>
> \*\*\*
>
> The plaintiff, as a matter of record, stated two years after leaving working under my broker's license that his gross revenues for Wired Real Estate Group was $100 million. The previous year -- and this is all in writing. 880,000 in 2011. When he was with me for two years, he generated a couple of deals that maybe gave me a few thousand dollars.
>
> \*\*\*
>
> I have not been treated fairly by this Court in my opinion and with all due respect, nor by the previous judge who heard the case, and I am praying against all hope that the Court of Appeals finds in my favor because this is a major travesty and miscarriage of justice.
>
> \*\*\*
>
> [A]lso, if the brief was read, and Mr. Kyle knows what's in the brief. He knows that his client deposited over $500,000 in undisclosed deposits, which is sitting in front of the Court of Appeal right now into a Wells Fargo account when he was working as an agent of mine. All of this was disregarded.
>
> \*\*\*

Kyle Law Corporation

> I filed this appeal in November of 2013, and I've been waiting patiently. I was in front of Judge Douglass, and I don't know if Mr. Kyle is also stating or telling you or if you understand that Judge Douglass – Judge Douglass is the one who asked me to sign it and said he would hear me again and give me an opportunity to sign the document.
>
> ***
>
> I signed the document, and I added that language because I felt I was being treated unfairly. Simple as that. There was no major intent to injure or hurt anyone. I earned that money from Mr. Thompson and for myself at an 85/15 split in favor of Mr. Thompson.
>
> ***
>
> I was hoping that this Court was going to see this contempt and wait until the Court of Appeals can run its course. Judge Jaroslovsky, Northern District, he was the bankruptcy judge. And Mr. Kyle knows because he has the motion. And he agreed we can't even go forward with the adversary proceeding because his client is attacking me in bankruptcy court. My constitutional right to file bankruptcy, and he's besmirching my reputation, my character, my integrity, and I've sat here.

[Exhibit 14, Contempt Transcript at 18:13 – 22:15].

**At no time during his lengthy statement to the Superior Court did Defendant Asimos ever assert or proclaim, in an attempt to avoid the *mens rea* determination necessary to contempt liability, that he had not been kept abreast of his lawyer's actions in the state court proceedings.**

### 3. Defendant Asimos Specifically Knew That Plaintiff Was Forced to Initiate and Prosecute Contempt Proceedings Against Him

Defendant Asimos also misrepresents his level of knowledge regarding the Contempt Proceedings filed against him. Specifically he states: "I was unaware that the Plaintiff was pursuing a contempt proceeding against me as Barsotti did not immediately disclose that fact to me." (Declaration of Dean Asimos (Adv. D.I. 81-1) at ¶ 30.) This statement is also belied by the evidence. Defendant Asimos was, in fact, placed on notice on July 30, 2015 that Plaintiff intended to file contempt proceedings if he did not provide the original signed Authorization

Kyle Law Corporation

Case: 14-01018   Doc# 82   Filed: 10/28/20   Entered: 10/28/20 16:05:00   Page 10 of 11

required by the Permanent Injunction. Plaintiff's counsel sent this notice not only to attorney Barsotti, **but also sent a copy of this letter to Defendant Asimos' counsel in this case, Joseph Angelo.** [*See*, July 30, 2015 Letter to Jessica R. Barsotti, Esq., which is copied to Joseph Angelo, Esq., attached as Exhibit 15 to the Third Kyle Decl.]. Certainly Defendant Asimos does not contend that Mr. Angelo also failed to advise him of the threatened contempt proceedings.

### 4. Discovery of Asimos' Attorney Jessica Barsotti Has Not Yet Been Conducted

Regardless, even if the Court is persuaded that Defendant Asimos may properly invoke the advice of counsel defense in connection with the Section 523(a)(6) claim against him, a decision on the Motion should be postponed until the parties have had the opportunity to obtain third-party discovery from attorney Barsotti to investigate whether she actually acted as a "lone wolf," as Defendant Asimos contends.

## III. CONCLUSION

For the foregoing reasons, and as set forth in the Motion, Plaintiff has established, as a matter of law, that Plaintiff's claims related to the Contract Attorney Fee Award, the Court Cost Award, the First Appeal Attorney Fee Award, the Contempt Judgment and the Second Appeal Attorney Fee Award were not "fairly contemplated" by Plaintiff as would be required to include such claims within the scope of the Discharge. Similarly, Defendant's asserted lack of knowledge of his attorney's litigation conduct is belied by the evidence before this Court. Accordingly, Plaintiff respectfully requests that his Motion for Summary Judgment be granted.

DATED: October 28, 2020    KYLE LAW CORPORATION

By */s/ Stephan E. Kyle*
Stephan E. Kyle, Esq.
Attorneys for Jason Everett Thompson

-11-
IN RE: DEAN GREGORY ASIMOS
ADV. CASE NO: 14-01018 CN