SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE HONORABLE TERI L. JACKSON          DEPT. 503

--oOo--

| | |
|---|---|
| JASON EVERETT THOMPSON and WIRED REAL ESTATE GROUP, INC., | ) ) ) |
| PLAINTIFFS, | ) ) |
| | ) No. CGC-11-514980 |
| VS. | ) ) |
| DEAN GREGORY ASIMOS, dba DRAKE REALTY, | ) ) ) |
| DEFENDANT. | ) ) |
| ———————————————————— | ) ) |
| AND RELATED CROSS-ACTION. | ) |
| ———————————————————— | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

February 4, 2016

ANGELA POURTABIB, CSR No. 13714
403806




BARKLEY
Court Reporters
barkley.com

(310) 207-8000 Los Angeles     (415) 433-5777 San Francisco     (949) 955-0400 Irvine          (858) 455-5444 San Diego
(310) 207-8000 Century City     (408) 885-0550 San Jose          (760) 322-2240 Palm Springs      (800) 222-1231 Carlsbad
(916) 922-5777 Sacramento       (800) 222-1231 Martinez          (702) 366-0500 Las Vegas         (800) 222-1231 Monterey
(951) 686-0606 Riverside        (818) 702-0202 Woodland Hills    (702) 366-0500 Henderson         (516) 277-9494 Garden City
(312) 379-5566 Chicago          00+1+800 222 1231 Paris          00+1+800 222 1231 Dubai          001+1+800 222 1231 Hong Kong

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                    COUNTY OF SAN FRANCISCO

3   BEFORE HONORABLE TERI L. JACKSON          DEPT. 503

4                        --oOo--

5    JASON EVERETT THOMPSON and WIRED     )
     REAL ESTATE GROUP, INC.,             )
6                                         )
                     PLAINTIFFS,          )
7                                         )No. CGC-11-514980
          VS.                             )
8                                         )
     DEAN GREGORY ASIMOS,                 )
9    dba DRAKE REALTY,                    )
                                          )
10                   DEFENDANT.           )
     _____ )
11                                        )
     AND RELATED CROSS-ACTION.            )
12   _____ )

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                       MOTIONS

17                   February 4, 2016

18

19

20

21

22

23

24   Reported by:  ANGELA POURTABIB, CSR No. 13714

25

                              2

BARKLEY Court Reporters

```
 1   APPEARANCES:

 2

 3   FOR THE PLAINTIFFS:

 4                  KYLE LAW CORPORATION
                    230 California Street
 5                  Suite 600
                    San Francisco, California 94111
 6                  (415) 839-8100
                    Skyle@kylelawcorp.com
 7                  Awinetroub@kylelawcorp.com

 8                  BY: STEPHAN E. KYLE, Attorney at Law
                        ANDREW H. WINETROUB, Attorney at Law
 9

10   FOR THE DEFENDANT:

11                  THE LAW OFFICE OF JESSICA R. BARSOTTI
                    5032 Woodminster Lane
12                  Oakland, California 94602
                    (510) 530-4078
13                  Jessica@barsottilawfirm.com

14                  BY: JESSICA R. BARSOTTI, Attorney at Law

15

16

17                         --oOo--

18

19

20

21

22

23

24

25


                             3
```

BARKLEY
Court Reporters

```
 1   Thursday, February 4, 2016                    2:25 p.m.

 2                           --oOo--

 3           THE COURT:  Calling the trial department motion

 4   calendar line 1, Jason Everett Thompson, et al., versus

 5   Dean Gregory Asimos, case No. 514980, Plaintiff's Motion

 6   for Attorneys' Fees and Costs.  Counsel, please state your

 7   appearances.

 8           MR. KYLE:  Good afternoon, Your Honor.  Stephan

 9   Kyle and Andrew Winetroub on behalf of the plaintiffs.

10           MR. WINETROUB:  Good afternoon.

11           MS. BARSOTTI:  Jessica Barsotti on behalf of the

12   defendant who is also present.

13           THE COURT:  Okay.  All right.  I have read and

14   considered the moving papers as well as the opposition.

15   And I will note for the record -- forgive the Court

16   starting so late.  I'm doing, as you know, now, a new

17   assignment down at the Hall of Justice, so literally I

18   just finished my calendar and dashed over here.

19           And so I received the oppositions.  I will note

20   that the opposition was filed late, and, furthermore, the

21   Court did not receive a courtesy copy as required under

22   our local rules.  However, I do note that plaintiff, you

23   did receive it, so I don't believe there has been any

24   prejudice, but the Court will note this for the record.

25           MR. KYLE:  That's fine, Your Honor.  We received
```

4

BARKLEY
Court Reporters

it.  We received it a little bit late, but that's why our
reply is a day or so late.

        THE COURT:  I understand.  Okay.  Anything
further you wish to --

        MR. KYLE:  Your Honor, if you'd like me to
address the merits, I'd be happy to.

        THE COURT:  Well, yeah.  Or can I be specific?
Where the Court is having -- not an issue, but there was a
request, and if you can -- and I'll get to it
specifically.  It was prior to this motion being put on
our calendar that started this back in August.  It was
almost the negotiations that you were doing with defense
counsel.  Do you know the period of time I'm talking
about?  Sometime in July.

        MR. KYLE:  Yes, Your Honor.

        THE COURT:  Oh, here it is.  You billed for the
July -- around July 2015 before this motion was filed, if
I'm not mistaken.  And can you tell me how does that
relate to the matter before this Court?

        MR. KYLE:  Well, Your Honor, that's the conduct.
We were trying to avoid the motion for contempt and OSC in
the first place, and that was sort of the final attempt.
Simultaneously with doing that, we were contemplating
bringing a motion for order to show cause re contempt, but
according to my review of the records, it looks like

```
 1    there's a total of 1.7 hours that were expended by me

 2    during that period of time.

 3              THE COURT:  I have the amount of $614.50; is that

 4    an approximation?

 5              MR. KYLE:  That sounds about right, Your Honor.

 6              THE COURT:  And then that includes your time as

 7    well as Mr. Kyle's time?

 8              MR. WINETROUB:  Mr. Winetroub.

 9              THE COURT:  Right.  Yes.  Excuse me.  Yours and

10    -- yours is $187.50 and Mr. Winetroup --

11              MR. WINETROUB:  Winetroub.

12              THE COURT:  "-troub" is 429 for that, period, if

13    I'm not mistaken, making it a total of $614.50.

14              MR. KYLE:  I'll take your word for it, Your

15    Honor.  It sounds about right.

16              THE COURT:  Okay.  And then did you ask for

17    postage?  Did I see a $34 request for postage?  Can you

18    tell me the --

19              MR. KYLE:  Well, there were some large filings,

20    and I believe there's also -- I don't have it broken down

21    here, Your Honor.

22              THE COURT:  It was $34 and something cents.

23              MR. KYLE:  Yeah I have $30.48 here in our

24    declaration, and that is --

25              THE COURT:  Proposed.
```

Case: 14-01018   Doc# 82   Filed: 02/20/14   Entered: 02/20/14 13:05:00   Page 6 of
30

REPORTER'S TRANSCRIPT OF PROCEEDINGS

BARKLEY
Court Reporters

MR. KYLE:  Yeah.  So some of the papers
themselves were thick, so it would -- you know, to have
them delivered --
          THE COURT:  Is that authorized?
          MR. KYLE:  Is postage authorized?
          THE COURT:  Yes.
          MR. KYLE:  Well, the statute calls for reasonable
attorneys' fees and costs.
          THE COURT:  Okay.
          MR. KYLE:  It doesn't specify which costs, and we
tried to be judicious in the costs that we requested.
But, Your Honor, that's one of the cost items that our
side incurred.
          THE COURT:  And then you also asked for costs on
the -- learning to e-file?  Or doing the procedure to
e-file?  Did I misread that?
          MR. KYLE:  Learning to e-file?
          THE COURT:  Well, not learning to e-file, but the
whole learning the process -- implementing the process to
e-file documents.  Did I miss that?  Maybe I did.
          MR. KYLE:  I do not --
          THE COURT:  I'm trying to break down -- you know,
I'll be honest with you, when I left private practice, I
thought I would never see billable hours and costs ever
again.  But I thought I read somewhere...

7

REPORTER'S TRANSCRIPT OF PROCEEDINGS

BARKLEY
Court Reporters

```
 1          MR. KYLE:  Yeah, there should not be any learning

 2   curve time in here, Your Honor.  This is time that was

 3   directly related to the contempt proceedings.

 4          MS. BARSOTTI:  Your Honor, if I may?  On 8/25/15,

 5   2.1 hours regarding SF Court accepting the file, legal

 6   research, and correspondence regarding electronic service.

 7          THE COURT:  I shouldn't say the word "learning to

 8   e-file," but just e-filing.

 9          MR. KYLE:  Your Honor, part of -- well, first of

10   all, if necessary, I can have Mr. Winetroub address this

11   by way of representation, or we can put him under oath,

12   and he can tell us exactly what that entry was related to,

13   but I do not think that we were billing the client nor are

14   we requesting time for -- to get up to speed on procedures

15   for e-filing.

16          THE COURT:  Okay.  All right.  Maybe I used the

17   wrong word, but I just saw that and I was thinking, "Is

18   that a part of the costs?"

19          How much was that that you billed at?

20          MR. KYLE:  At 8/25, Your Honor, that looks like

21   it's -- the total entry of that date is 2.1 hours for Mr.

22   Winetroub.  But that includes additional work on there as

23   well.

24          THE COURT:  Okay.  I had some -- those were some

25   of my specific concerns, but if you wish to argue to the
```

8

1  Court, you're more than happy to address the substantive

2  issues.

3      MR. KYLE:  Well, thank you, Your Honor.  I

4  appreciate that.  You know, we did go through painstaking

5  effort, Your Honor, to break out down to the very tenth of

6  an hour every single bit of time that was expended with

7  respect to the contempt proceedings.  And, you know, I

8  would also note that this process has been going on now

9  for close to six months.

10      We've had -- this is our sixth hearing in the

11  matter, and, you know, it's -- we also provided the

12  research about the hourly rates, that they're reasonable

13  in this community.  I would hope -- I'm sure that you've

14  seen enough lawyers come through requesting attorney time

15  that you would agree that given our experience levels that

16  those are very reasonable rates.

17      But we certainly have additional information

18  there that we can provide the Court if necessary.  You

19  know, we requested a total of 64 -- just north of $64,000

20  related to the contempt proceedings.

21      Your Honor, in my professional judgment, all of

22  this time was both necessary and reasonably incurred in

23  achieving the results that were achieved.  We certainly

24  could have done less work and not achieved the results,

25  but each and every bit of time that we expended was

9

BARKLEY
Court Reporters

necessary to accomplish what we needed to on behalf of our client.

I would also throw in, Your Honor, that a big part of the reason why hours are as high as they are is because we've been dealing with some very obstructive tactics by defense counsel. And I would go back to the very beginning when we tried to get her to get her client to send us an unaltered form of the authorization, and all we get back is, "He's already signed everything. If you have a problem, talk to Carr McClellan. They're the ones that are holding up this process."

Which, you as you know, Your Honor, is not the case. When she opposed our original motion for an order to show cause, she seeks sanctions against my firm. That was completely -- I still can't believe that that was the defense tactic.

You'll remember that she did a filing of a notice of lodging but then actually didn't lodge the document at the same time or contemporaneously requiring us to figure out with the court clerk, has it been lodged? Has it not been lodged? What's the effect of a notice when the document hasn't been lodged? These things all take time, Your Honor, to do it the right way.

The defense's reliance on both the appeal and the bankruptcy proceedings as a defense to the contempt charge

10

BARKLEY
Court Reporters

1  complicated the matter.  There is obviously a lot of paper

2  that's been filed in both the bankruptcy proceedings and

3  in the appeal that were required to be analyzed in order

4  to present the Court with the right information around the

5  contempt proceedings.

6          Your Honor, the very day that you issued the

7  judgment of contempt, you ordered the defendant to sign

8  and deliver that day an unaltered form of the

9  authorization.  Counsel did not deliver that to us.  It

10 wasn't delivered to us the next day or even the day after

11 that.  We were then required to bring a notice of

12 noncompliance, so we had to file yet another document with

13 the Court.

14          When we finally did receive a signed copy of the

15 authorization, it wasn't dated, it wasn't notarized,

16 leading to authenticity issues, Your Honor.  It didn't

17 even come with a cover letter from counsel.  It was just

18 simply stuffed in an envelope.

19          Ultimately, Your Honor -- well, and maybe the

20 biggest thing to note here is there was also, and you'll

21 recall this, a hearing on November 13th at which time you

22 ordered the parties to return.  You coordinated with

23 counsel's calendar, you coordinated with our calendar.  We

24 were here, Your Honor, for the hearing.  Counsel and her

25 client did not show up for that hearing.

11

BARKLEY
Court Reporters

That then required us to participate in a bench
warrant process.  So, Your Honor, this is not just simply
a motion and a hearing on the motion.  This has been an
extended period of time.  We were required to prepare
evidence.  We were prepared.  We thought that Mr. Asimos
would actually get on the stand and give testimony as to
why he did not comply with the Court's original order and
injunction.

We prepared a cross-examination.  We were
prepared to get the information and evidence that we
needed to present the Court to substantiate the contempt
charge.

So there was a lot of work, Your Honor, required
by this, and I would say that, quite frankly, it's almost
miraculous that we were able to get it down in the amount
of $64,000.  And I don't mean that with any sort of light
touch whatsoever.  I've been doing litigation for a long
time now, and I've seen some very big attorney fee bills,
and I would say this one is modest in comparison.

Thank you, Your Honor.

THE COURT:  Thank you very much.

Would you care to be heard?

MS. BARSOTTI:  Yes, Your Honor.  First of all, I
don't believe that there were any obstructive tactics
taken whatsoever by the defendant in this case.  Asking

12

Case: 14-01018   Doc# 82   Filed: 10/28/20   Entered: 10/28/20 16:05:00   Page 12
of 30

BARKLEY
Court Reporters

1  for sanctions was a legitimate request not intending to

2  create any obstruction whatsoever.

3          Both I and my client believed that this entire

4  matter was stayed by the appeal, which we still believe

5  that.  All of our responses to this motion were simply in

6  response to the legal arguments that were being made.

7          The issue of lodging the document was supposedly

8  researched and brought out initially by Mr. Kyle.  It was

9  not in response to our notice that was provided to the

10 Court, so there should be no additional research needed on

11 that point.

12         Second of all, Mr. Kyle is handling the appeal in

13 this case, so he is very well aware of all the issues in

14 the appeal, did not need to do extra research regarding

15 what the appeal was about or what are the issues in the

16 appeal.  He's very well-versed in all of those things.

17         The issue of the Court ordering my client to sign

18 and deliver the document the day of our hearing, when we

19 went off the record that day, the Court told us that we

20 needed to sign and deliver it by November 9th, and so I

21 take issue with the fact that this is the interpretation

22 that Mr. Kyle has made.

23         THE COURT:  And I'm going to take issue with you.

24 I do remember very specifically that it was to be done

25 that day.

13

REPORTER'S TRANSCRIPT OF PROCEEDINGS

BARKLEY
Court Reporters

1      MS. BARSOTTI:  And then what was said off the

2  record, Your Honor?

3      THE COURT:  That I would stay the thousand

4  dollars because if we could just get it signed today, it

5  would be --

6      MS. BARSOTTI:  By the 9th, you said, Your Honor.

7  That is what I recall.

8      In any event, ordering my client to sign and

9  deliver the document that day would prevent him from

10 taking any recourse against the decision because Mr. Kyle

11 had informed me if I get that order, I will go collect the

12 money the moment I get the signed authorization, which

13 would leave my client in the position of having no

14 opportunity to file a writ or file anything with regards

15 to your order.

16     THE COURT:  Why would that stop him from legally

17 challenging it --

18     MS. BARSOTTI:  Because --

19     THE COURT:  Counsel.  If he gets the money, and

20 the Court's wrong, and he spends it, he's going to be

21 liable to your client, so it doesn't stop you legally from

22 filing your writ.  And by the way, did you file a writ?

23     MS. BARSOTTI:  No, we did not, Your Honor.  My

24 client does not have the resources for that unfortunately.

25     The claim that the signed authorization was not

                              14

BARKLEY
Court Reporters

1    notarized, nobody ever said that it needed to be

2    notarized, so I don't understand that.

3            In addition, the former counsel for Mr. Thompson

4    had fully researched and briefed this issue prior and,

5    apparently, charged his client.  So Mr. Kyle should have

6    had all of that research available to him in the file,

7    preventing so much extra research that supposedly he did,

8    ten hours of research per page for a contempt motion that

9    had two cases cited in it.  That's not reasonable, Your

10   Honor.

11           And I'm sure Your Honor has seen many cases, and

12   this is an unreasonable request, and in my 16 years as an

13   attorney, this case is the most egregious miscarriage of

14   justice that I have seen.  And that's all I have to say.

15           THE COURT:  Do you care to reply?  If you wish

16   to.

17           MR. KYLE:  Briefly, Your Honor.  On the issue of

18   the appeal, counsel is correct.  We are -- we are the

19   counsel of record for the plaintiffs, the -- in the

20   appeal; however, we weren't -- this motion and the

21   reference to the appeal, Your Honor, had nothing to do

22   with the merits of the appeal which is what we're dealing

23   with in the appellate process.

24           Instead, by injecting the appeal into these

25   proceedings, what counsel was attempting to do was

                              15

1   essentially leverage that as a procedural defense to our

2   efforts to bring the contempt proceedings.

3          Entirely different context, Your Honor.  One is

4   obviously the merits, the other is the procedure.  And so

5   it's the procedural aspects of whether or not the appeal

6   had any impact on our ability to proceed in a contempt

7   proceeding was the focus there.

8          Your Honor, I'm not -- I really don't want to get

9   into some of the other things.  I obviously disagree with

10  counsel's interpretation of what this Court's orders were.

11  I think you know and I know exactly what you ordered, and

12  their choosing not to abide by that is either a failure to

13  pay close enough attention to what the Court's order is or

14  a complete disobedience.  I don't want to speculate any

15  further on that, Your Honor.

16          THE COURT:  All right.  Submitted?

17          MR. KYLE:  Submitted.

18          THE COURT:  Okay.  The Court finds that it's not

19  -- plaintiff is not entitled to the following:  $614.50

20  for attorneys' fees.  I don't see that related to the OSC.

21  I'm also disallowing the $30.48 for postage and the

22  2.5 hours on August 25th, 2015.  The Court is disallowing

23  fees for that amount.

24          However, based upon the noticed motion and

25  arguments and the papers that have been submitted to this

16

```
1    Court, the Court finds that the plaintiff has made a
2    sufficient showing for and are entitled to attorneys' fees
3    and costs incurred in connection with this contempt
4    proceeding against the defendant, Dean Gregory Asimos,
5    minus the amount that the Court has already indicated for
6    the record.
7              Prepare the order.
8              MR. KYLE:  Thank you, Your Honor.  We do have
9    a -- we have a formal order for the Court.  We've already
10   shown it to --
11             THE COURT:  Does it exclude those amounts?
12             MR. KYLE:  It does not, we just have to fill in
13   the blanks.  Would you like us to do that before
14   submitting this?
15             MS. BARSOTTI:  Your Honor, my client would like
16   to make a statement regarding the equities, if he may?  If
17   the Court will allow?
18             THE COURT:  I thought we had -- we heard the
19   arguments, and I -- it was submitted.
20             MS. BARSOTTI:  I had not said, "Submitted," Your
21   Honor.
22             THE COURT:  Oh, I'm sorry.  Was there further
23   argument you wish to be made?
24             MS. BARSOTTI:  Yes, Your Honor.  My client would
25   like to make a statement regarding the equities.  Since
```

17

```
 1   equitable considerations are appropriate in attorneys'

 2   fees motion, he would like to address the Court with some

 3   equitable arguments.

 4            THE COURT:  He can address the Court.

 5            MS. BARSOTTI:  Thank you, Your Honor.

 6            THE COURT:  I'm sorry.  I thought you said

 7   "Submitted."  I thought I heard it.

 8            MR. ASIMOS:  Your Honor, should I sit here and

 9   say it, or --

10            THE COURT:  You can stand, please.

11            MR. ASIMOS:  Stand.

12            Your Honor, I do not have the ability to pay such

13   a fine for these fees.  I am financially distressed.  I

14   have been in this litigation with the plaintiff for over

15   five years.  I've waited over two years in the appeal --

16   Court of Appeal to get an answer.

17            I was a broker.  The money that was released to

18   this plaintiff was -- he was an agent, I was a broker.

19   Only an attorney and a real estate broker can collect

20   commissions.

21            I feel that my civil rights have been trampled

22   on.  I feel that I have not received a fair trial.  I've

23   never -- this is the first I've heard of Mr. Kyle stating

24   that he planned to have a cross-examination and have me

25   provide testimony.  I would have prayed for that.  I would
```

                                  18

```
 1   have loved to have answered his questions.  I would have
 2   loved to have answered the Court's questions.
 3           This -- the -- this gentleman, Mr. Kyle, is also
 4   handling the adversary proceeding.  It's a constitutional
 5   right of mine to file bankruptcy.  The Court doesn't have
 6   the time or probably the patience to listen to why I filed
 7   bankruptcy.
 8           When I first stepped into an office here in San
 9   Francisco in November of 2009, I've dealt with this
10   plaintiff for all of these years who has created fraud
11   against me, and the judgment that was rendered was unfair.
12   That's why it's in the Court of Appeals.
13           The plaintiff, as a matter of record, stated two
14   years after leaving working under my broker's license that
15   his gross revenues for Wired Real Estate Group was
16   $100 million.  The previous year -- and this is all in
17   writing.  880,000 in 2011.  When he was with me for two
18   years, he generated a couple of deals that maybe gave me a
19   few thousand dollars.
20           I have not been treated fairly by this Court in
21   my opinion and with all due respect, nor by the previous
22   judge who heard the case, and I am praying against all
23   hope that the Court of Appeals finds in my favor because
24   this is a major travesty and miscarriage of justice.
25           And for me to pay for contempt, not one question
```

Case: 14-01018   Doc# 82   Filed: 12/22/16   Entered: 12/22/16 16:05:00   Page 19
of 30
REPORTER'S TRANSCRIPT OF PROCEEDINGS

BARKLEY
Court Reporters

1   was directed at me, what was in my mind, what was in my

2   thoughts?  And I've been left here to pay this law firm

3   and the plaintiff 50, 60, $70,000 for a box that wasn't

4   checked on a Court of Appeal document.

5        Because that's basically -- I remember, Your

6   Honor, that's what I took from the whole proceedings.  Had

7   that box been checked on the injunction, I would have not

8   been found in contempt.  Basically, this Court stated that

9   because that box was not checked, because it was an

10  injunction, that I was in contempt.

11       That money sat there, Your Honor, and that money,

12  that hundred thousand dollars was when I was the sole

13  plaintiff as the broker representing Jason Everett

14  Thompson as my agent.  Jason Everett Thompson was never a

15  broker when he was working with me.  He was an agent.

16       I defended him in that case.  Carr McClellan,

17  William Gutierrez, on his advice, I told him I wanted to

18  stop the lawsuit because I found out that Mr. Thompson was

19  not being ethical, and that's when they had me sign a

20  conflict waiver.  That money was supposed to be disbursed

21  in an interpleader action or by mutual agreement.

22       This is just an unbelievable miscarriage of

23  justice to me, to my client -- excuse me, to my counselor.

24  I don't have the wherewithal to pay this money.  I don't

25  think you want to hear my financial woes and what my

20

```
 1   burden is on a daily basis with my family because it

 2   really probably isn't relevant to this Court, but it's

 3   relevant to me.  I am unable to pay this law firm, excuse

 4   me, 70 -- whatever 50,000, 60,000, whatever it is.

 5          And, Your Honor, do you realize that the judgment

 6   against me is 624,000?  This plaintiff -- this plaintiff

 7   has spent over $350,000 in court fees.  It is a matter of

 8   record.  300- -- to stop me from getting $15,000.  To stop

 9   me from getting as -- also, if the brief was read, and

10   Mr. Kyle knows what's in the brief.  He knows that his

11   client deposited over $500,000 in undisclosed deposits,

12   which is sitting in front of the Court of Appeal right now

13   into a Wells Fargo account when he was working as an agent

14   of mine.  All of this was disregarded.

15          There's 37 points of conflict of -- we were

16   objecting to Judge Douglass that he refused to answer.  He

17   took over 120 days to give us a statement of decision.

18   120 days after the trial, and then he formalized his

19   statement of decision six months later.

20          I filed this appeal in November of 2013, and I've

21   been waiting patiently.  I was in front of Judge Douglass,

22   and I don't know if Mr. Kyle is also stating or telling

23   you or if you understand that Judge Douglass -- Judge

24   Douglass is the one who asked me to sign it and said he

25   would hear me again and give me an opportunity to sign the
```

1    document.

2         I signed the document, and I added that language

3    because I felt I was being treated unfairly.  Simple as

4    that.  There was no major intent to injure or hurt anyone.

5    I earned that money from Mr. Thompson and for myself at an

6    85/15 split in favor of Mr. Thompson.

7         I was hoping that this Court was going to see

8    this contempt and wait until the Court of Appeals can run

9    its course.  Judge Jaroslovsky, Northern District, he was

10   the bankruptcy judge.  And Mr. Kyle knows because he has

11   the motion.  And he agreed we can't even go forward with

12   the adversary proceeding because his client is attacking

13   me in bankruptcy court.  My constitutional right to file

14   bankruptcy, and he's besmirching my reputation, my

15   character, my integrity, and I've sat here.

16        You don't think I would show up at a court date

17   if I knew there was a court date?  If my counselor had

18   made some mistakes, what can I say?  Procedurally, maybe

19   some mistakes were made, but they were not intended to

20   upset you, Your Honor, or this Court.

21        I've been dealing with this for many, many years.

22   I'm going a little dry in the mouth here, but I just -- I

23   appreciate and I can't thank you enough for you allowing

24   me without interruption, and I respect you for that, and I

25   thank you very much, Your Honor.

22

BARKLEY
Court Reporters

```
1          THE COURT:  Thank you.  Anything further?

2          MR. KYLE:  No, Your Honor.

3          THE COURT:  All right.  Thank you.  Prepare the

4   order.

5          MR. KYLE:  Thank you, Your Honor.

6          MS. BARSOTTI:  Thank you, Your Honor.

7          (The proceedings were concluded at 2:53 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

BARKLEY
Court Reporters

```
1              COURT REPORTERS CERTIFICATE

2     STATE OF CALIFORNIA      )
                               )   ss.
3     COUNTY OF MARIN          )

4

5

6          I, Angela Pourtabib , hereby certify:

7          I am a duly qualified Certified Shorthand

8     Reporter, in the State of California, holder of

9     Certificate Number CSR 13714 issued by the Court

10    Reporters Board of California and which is in full

11    force and effect.

12         I am not financially interested in this

13    action and am not a relative or employee of any

14    attorney of the parties, or of any of the parties.

15         I am the reporter that stenographically

16    recorded the testimony in the foregoing

17    proceeding and the foregoing transcript is a true

18    record of the testimony given.

19

20    Dated: February 11, 2016

21

22

23    _____

24

25



                           24
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

BARKLEY
Court Reporters

## $

**$100 (1)**
19:16
**$15,000 (1)**
21:8
**$187.50 (1)**
6:10
**$30.48 (2)**
6:23;16:21
**$34 (2)**
6:17,22
**$350,000 (1)**
21:7
**$500,000 (1)**
21:11
**$614.50 (3)**
6:3,13;16:19
**$64,000 (2)**
9:19;12:16
**$70,000 (1)**
20:3

## A

**abide (1)**
16:12
**ability (2)**
16:6;18:12
**able (1)**
12:15
**accepting (1)**
8:5
**accomplish (1)**
10:1
**according (1)**
5:25
**account (1)**
21:13
**achieved (2)**
9:23,24
**achieving (1)**
9:23
**action (1)**
20:21
**actually (2)**
10:18;12:6
**added (1)**
22:2
**addition (1)**
15:3
**additional (3)**
8:22;9:17;13:10
**address (5)**
5:6;8:10;9:1;18:2,
4
**adversary (2)**
19:4;22:12
**advice (1)**
20:17
**afternoon (2)**
4:8,10

**again (2)**
7:25;21:25
**against (6)**
10:14;14:10;17:4;
19:11,22;21:6
**agent (4)**
18:18;20:14,15;
21:13
**agree (1)**
9:15
**agreed (1)**
22:11
**agreement (1)**
20:21
**al (1)**
4:4
**allow (1)**
17:17
**allowing (1)**
22:23
**almost (2)**
5:12;12:14
**amount (4)**
6:3;12:15;16:23;
17:5
**amounts (1)**
17:11
**analyzed (1)**
11:3
**Andrew (1)**
4:9
**answered (2)**
19:1,2
**apparently (1)**
15:5
**appeal (18)**
10:24;11:3;13:4,
12,14,15,16;15:18,
20,21,22,24;16:5;
18:15,16;20:4;21:12,
20
**Appeals (3)**
19:12,23;22:8
**appearances (1)**
4:7
**appellate (1)**
15:23
**appreciate (2)**
9:4;22:23
**appropriate (1)**
18:1
**approximation (1)**
6:4
**argue (1)**
8:25
**argument (1)**
17:23
**arguments (4)**
13:6;16:25;17:19;
18:3
**around (2)**
5:17;11:4
**Asimos (5)**

**4:5;12:5;17:4;**
18:8,11
**aspects (1)**
16:5
**assignment (1)**
4:17
**attacking (1)**
22:12
**attempt (1)**
5:22
**attempting (1)**
15:25
**attention (1)**
16:13
**attorney (4)**
9:14;12:18;15:13;
18:19
**Attorneys' (5)**
4:6;7:8;16:20;
17:2;18:1
**August (2)**
5:11;16:22
**authenticity (1)**
11:16
**authorization (5)**
10:8;11:9,15;
14:12,25
**authorized (2)**
7:4,5
**available (1)**
15:6
**avoid (1)**
5:21
**aware (1)**
13:13

## B

**back (3)**
5:11;10:6,9
**bankruptcy (7)**
10:25;11:2;19:5,7;
22:10,13,14
**BARSOTTI (13)**
4:11,11;8:4;12:23;
14:1,6,18,23;17:15,
20,24;18:5;23:6
**based (1)**
16:24
**basically (2)**
20:5,8
**basis (1)**
21:1
**beginning (1)**
10:7
**behalf (3)**
4:9,11;10:1
**bench (1)**
12:1
**besmirching (1)**
22:14
**big (2)**
10:3;12:18

**biggest (1)**
11:20
**billable (1)**
7:24
**billed (2)**
5:16;8:19
**billing (1)**
8:13
**bills (1)**
12:18
**bit (3)**
5:1;9:6,25
**blanks (1)**
17:13
**both (4)**
9:22;10:24;11:2;
13:3
**box (3)**
20:3,7,9
**break (2)**
7:22;9:5
**brief (2)**
21:9,10
**briefed (1)**
15:4
**Briefly (1)**
15:17
**bring (2)**
11:11;16:2
**bringing (1)**
5:24
**broken (1)**
6:20
**broker (5)**
18:17,18,19;20:13,
15
**broker's (1)**
19:14
**brought (1)**
13:8
**burden (1)**
21:1

## C

**calendar (5)**
4:4,18;5:11;11:23,
23
**Calling (1)**
4:3
**calls (1)**
7:7
**can (13)**
5:7,9,18;6:17;
8:10,11,12;9:18;
18:4,10,19;22:8,18
**care (2)**
12:22;15:15
**Carr (2)**
10:10;20:16
**case (7)**
4:5;10:13;12:25;
13:13;15:13;19:22;

**20:16**
**cases (2)**
15:9,11
**cause (2)**
5:24;10:14
**cents (1)**
6:22
**certainly (2)**
9:17,23
**challenging (1)**
14:17
**character (1)**
22:15
**charge (2)**
10:25;12:12
**charged (1)**
15:5
**checked (3)**
20:4,7,9
**choosing (1)**
16:12
**cited (1)**
15:9
**civil (1)**
18:21
**claim (1)**
14:25
**clerk (1)**
10:20
**client (16)**
8:13;10:2,7;11:25;
13:3,17;14:8,13,21,
24;15:5;17:15,24;
20:23;21:11;22:12
**close (2)**
9:9;16:13
**collect (2)**
14:11;18:19
**commissions (1)**
18:20
**community (1)**
9:13
**comparison (1)**
12:19
**complete (1)**
16:14
**completely (1)**
10:15
**complicated (1)**
11:1
**comply (1)**
12:7
**concerns (1)**
8:25
**concluded (1)**
23:7
**conduct (1)**
5:20
**conflict (2)**
20:20;21:15
**connection (1)**
17:3
**considerations (1)**

18:1
considered (1)
4:14
constitutional (2)
19:4;22:13
contemplating (1)
5:23
contemporaneously (1)
10:19
contempt (17)
5:21,24;8:3;9:7,
20;10:25;11:5,7;
12:11;15:8;16:2,6;
17:3;19:25;20:8,10;
22:8
context (1)
16:3
coordinated (2)
11:22,23
copy (2)
4:21;11:14
correspondence (1)
8:6
cost (1)
7:12
Costs (8)
4:6;7:8,10,11,14,
24;8:18;17:3
Counsel (11)
4:6;5:13;10:6;
11:9,17,24;14:19;
15:3,18,19,25
counselor (2)
20:23;22:17
counsel's (2)
11:23;16:10
couple (1)
19:18
course (1)
22:9
COURT (77)
4:3,13,15,21,24;
5:3,7,8,16,19;6:3,6,9,
12,16,22,25;7:4,6,9,
14,18,22;8:5,7,16,
24;9:1,18;10:20;
11:4,13;12:11,21;
13:10,17,19,23;14:3,
16,19;15:15;16:16,
18,18,22;17:1,1,5,9,
11,17,18,22;18:2,4,4,
6,10,16;19:5,12,20,
23;20:4,8;21:2,7,12;
22:7,8,13,16,17,20;
23:1,3
courtesy (1)
4:21
Court's (5)
12:7;14:20;16:10,
13;19:2
cover (1)
11:17
create (1)

13:2
created (1)
19:10
cross-examination (2)
12:9;18:24
curve (1)
8:2

D

daily (1)
21:1
dashed (1)
4:18
date (3)
8:21;22:16,17
dated (1)
11:15
day (9)
5:2;11:6,8,10,16;
13:18,19,25;14:9
days (2)
21:17,18
dealing (1)
10:5;15:22;22:21
deals (1)
19:18
dealt (1)
19:9
Dean (2)
4:5;17:4
decision (3)
14:10;21:17,19
declaration (1)
6:24
defendant (4)
4:12;11:7;12:25;
17:4
defended (1)
20:16
defense (5)
5:12;10:6,16,25;
16:1
defense's (1)
10:24
deliver (5)
11:8,9;13:18,20;
14:9
delivered (2)
7:3;11:10
department (1)
4:3
deposited (1)
21:11
deposits (1)
21:11
different (1)
16:3
directed (1)
20:1
directly (1)
8:3
disagree (1)

16:9
disallowing (2)
16:21,22
disbursed (1)
20:20
disobedience (1)
16:14
disregarded (1)
21:14
distressed (1)
18:13
District (1)
22:9
document (9)
10:18,22;11:12;
13:7,18;14:9;20:4;
22:1,2
documents (1)
7:20
dollars (3)
14:4;19:19;20:12
done (2)
9:24;13:24
Douglass (4)
21:16,21,23,24
down (5)
4:17;6:20;7:22;
9:5;12:15
dry (1)
22:22
due (1)
19:21
during (1)
6:2

E

earned (1)
22:5
effect (1)
10:21
effort (1)
9:5
efforts (1)
16:2
e-file (6)
7:15,16,17,18,20;
8:8
e-filing (2)
8:8,15
egregious (1)
15:13
either (1)
16:12
electronic (1)
8:6
enough (3)
9:14;16:13;22:23
entire (1)
13:3
Entirely (1)
16:3
entitled (2)

16:19;17:2
entry (2)
8:12,21
envelope (1)
11:18
equitable (2)
18:1,3
equities (2)
17:16,25
essentially (1)
16:1
estate (2)
18:19;19:15
et (1)
4:4
ethical (1)
20:19
even (3)
11:10,17;22:11
event (1)
14:8
Everett (3)
4:4;20:13,14
evidence (2)
12:5,10
exactly (2)
8:12;16:11
exclude (1)
17:11
Excuse (3)
6:9;20:23;21:3
expended (3)
6:1;9:6,25
experience (1)
9:15
extended (1)
12:4
extra (2)
13:14;15:7

F

fact (1)
13:21
failure (1)
16:12
fair (1)
18:22
fairly (1)
19:20
family (1)
21:1
Fargo (1)
21:13
favor (2)
19:23;22:6
February (1)
4:1
fee (1)
12:18
feel (2)
18:21,22
Fees (8)

4:6;7:8;16:20,23;
17:2;18:2,13;21:7
felt (1)
22:3
few (1)
19:19
figure (1)
10:19
file (8)
8:5;11:12;14:14,
14,22;15:6;19:5;
22:13
filed (5)
4:20;5:17;11:2;
19:6;21:20
filing (2)
10:17;14:22
filings (1)
6:19
fill (1)
17:12
final (1)
5:22
finally (1)
11:14
financial (1)
20:25
financially (1)
18:13
finds (3)
16:18;17:1;19:23
fine (2)
4:25;18:13
finished (1)
4:18
firm (1)
10:14;20:2;21:3
first (5)
5:22;8:9;12:23;
18:23;19:8
five (1)
18:15
focus (1)
16:7
following (1)
16:19
forgive (1)
4:15
form (2)
10:8;11:8
formal (1)
17:9
formalized (1)
21:18
former (1)
15:3
forward (1)
22:11
found (2)
20:8,18
Francisco (1)
19:9
frankly (1)

Case: 14-01018   Doc# 82-2   Filed: 10/28/20   Entered: 10/28/20 16:05:00   Page 26
of 30

12:14
**fraud (1)**
19:10
**front (2)**
21:12,21
**fully (1)**
15:4
**further (4)**
5:4;16:15;17:22;
23:1
**furthermore (1)**
4:20

### G

**gave (1)**
19:18
**generated (1)**
19:18
**gentleman (1)**
19:3
**gets (1)**
14:19
**given (1)**
9:15
**Good (2)**
4:8,10
**Gregory (2)**
4:5;17:4
**gross (1)**
19:15
**Group (1)**
19:15
**Gutierrez (1)**
20:17

### H

**Hall (1)**
4:17
**handling (2)**
13:12;19:4
**happy (2)**
5:6;9:1
**hear (2)**
20:25;21:25
**heard (5)**
12:22;17:18;18:7,
23;19:22
**hearing (6)**
9:10;11:21,24,25;
12:3;13:18
**high (1)**
10:4
**holding (1)**
10:11
**honest (1)**
7:23
**Honor (52)**
4:8,25;5:5,15,20;
6:5,15,21;7:12;8:2,4,
9,20;9:3,5,21;10:3,
12,23;11:6,16,19,24;

12:2,13,20,23;14:2,
6,23;15:10,11,17,21;
16:3,8,15;17:8,15,
21,24;18:5,8,12;
20:6,11;21:5;22:20,
25;23:2,5,6
**hope (2)**
9:13;19:23
**hoping (1)**
22:7
**hour (1)**
9:6
**hourly (1)**
9:12
**hours (7)**
6:1;7:24;8:5,21;
10:4;15:8;16:22
**hundred (1)**
20:12
**hurt (1)**
22:4

### I

**impact (1)**
16:6
**implementing (1)**
7:19
**includes (2)**
6:6;8:22
**incurred (3)**
7:13;9:22;17:3
**indicated (1)**
17:5
**information (3)**
9:17;11:4;12:10
**informed (1)**
14:11
**initially (1)**
13:8
**injecting (1)**
15:24
**injunction (3)**
12:8;20:7,10
**injure (1)**
22:4
**Instead (1)**
15:24
**integrity (1)**
22:15
**intended (1)**
22:19
**intending (1)**
13:1
**intent (1)**
22:4
**interpleader (1)**
20:21
**interpretation (2)**
13:21;16:10
**interruption (1)**
22:24
**into (4)**

15:24;16:9;19:8;
21:13
**issue (7)**
5:8;13:7,17,21,23;
15:4,17
**issued (1)**
11:6
**issues (4)**
9:2;11:16;13:13,
15
**items (1)**
7:12

### J

**Jaroslovsky (1)**
22:9
**Jason (3)**
4:4;20:13,14
**Jessica (1)**
4:11
**judge (7)**
19:22;21:16,21,23,
23;22:9,10
**judgment (4)**
9:21;11:7;19:11;
21:5
**judicious (1)**
7:11
**July (3)**
5:14,17,17
**Justice (4)**
4:17;15:14;19:24;
20:23

### K

**knew (1)**
22:17
**knows (3)**
21:10,10;22:10
**KYLE (36)**
4:8,9,25;5:5,15,20;
6:5,14,19,23;7:1,5,7,
10,17,21;8:1,9,20;
9:3;13:8,12,22;
14:10;15:5,17;
16:17;17:8,12;
18:23;19:3;21:10,
22;22:10;23:2,5
**Kyle's (1)**
6:7

### L

**language (1)**
22:2
**large (1)**
6:19
**late (4)**
4:16,20;5:1,2
**later (1)**
21:19

**law (2)**
20:2;21:3
**lawsuit (1)**
20:18
**lawyers (1)**
9:14
**leading (1)**
11:16
**learning (6)**
7:15,17,18,19;8:1,
7
**leave (1)**
14:13
**leaving (1)**
19:14
**left (2)**
7:23;20:2
**legal (2)**
8:5;13:6
**legally (2)**
14:16,21
**legitimate (1)**
13:1
**less (1)**
9:24
**letter (1)**
11:17
**levels (1)**
9:15
**leverage (1)**
16:1
**liable (1)**
14:21
**license (1)**
19:14
**light (1)**
12:16
**line (1)**
4:4
**listen (1)**
19:6
**literally (1)**
4:17
**litigation (2)**
12:17;18:14
**little (1)**
5:1;22:22
**local (1)**
4:22
**lodge (1)**
10:18
**lodged (3)**
10:20,21,22
**lodging (2)**
10:18;13:7
**long (1)**
12:17
**looks (2)**
5:25;8:20
**lot (2)**
11:1;12:13
**loved (1)**
19:1,2

### M

**major (2)**
19:24;22:4
**making (1)**
6:13
**many (3)**
15:11;22:21,21
**matter (6)**
5:19;9:11;11:1;
13:4;19:13;21:7
**may (2)**
8:4;17:16
**Maybe (5)**
7:20;8:16;11:19;
19:18;22:18
**McClellan (2)**
10:10;20:16
**mean (1)**
12:16
**merits (3)**
5:6;15:22;16:4
**million (1)**
19:16
**mind (1)**
20:1
**mine (2)**
19:5;21:14
**minus (1)**
17:5
**miraculous (1)**
12:15
**miscarriage (3)**
15:13;19:24;20:22
**misread (1)**
7:16
**miss (1)**
7:20
**mistaken (2)**
5:18;6:13
**mistakes (2)**
22:18,19
**modest (1)**
12:19
**moment (1)**
14:12
**money (8)**
14:12,19;18:17;
20:11,11,20,24;22:5
**months (2)**
9:9;21:19
**more (1)**
9:1
**most (1)**
15:13
**motion (15)**
4:3,5;5:10,17,21,
24;10:13;12:3,3;
13:5;15:8;20;16:24;
18:2;22:11
**mouth (1)**
22:22

**moving (1)**
  4:14
**much (4)**
  8:19;12:21;15:7;
  22:25
**mutual (1)**
  20:21
**myself (1)**
  22:5

**N**

**necessary (4)**
  8:10;9:18,22;10:1
**need (1)**
  13:14
**needed (5)**
  10:1;12:11;13:10,
  20;15:1
**negotiations (1)**
  5:12
**new (1)**
  4:16
**next (1)**
  11:10
**nobody (1)**
  15:1
**noncompliance (1)**
  11:12
**nor (2)**
  8:13;19:21
**north (1)**
  9:19
**Northern (1)**
  22:9
**notarized (3)**
  11:15;15:1,2
**note (6)**
  4:15,19,22,24;9:8;
  11:20
**notice (4)**
  10:17,21;11:11;
  13:9
**noticed (1)**
  16:24
**November (4)**
  11:21;13:20;19:9;
  21:20

**O**

**oath (1)**
  8:11
**objecting (1)**
  21:16
**obstruction (1)**
  13:2
**obstructive (2)**
  10:5;12:24
**obviously (3)**
  11:1;16:4,9
**off (2)**
  13:19;14:1

**office (1)**
  19:8
**one (5)**
  7:12;12:19;16:3;
  19:25;21:24
**ones (1)**
  10:10
**Only (1)**
  18:19
**oOo- (1)**
  4:2
**opinion (1)**
  19:21
**opportunity (2)**
  14:14;21:25
**opposed (1)**
  10:13
**opposition (2)**
  4:14,20
**oppositions (1)**
  4:19
**order (10)**
  5:24;10:13;11:3;
  12:7;14:11,15;
  16:13;17:7,9;23:4
**ordered (3)**
  11:7,22;16:11
**ordering (2)**
  13:17;14:8
**orders (1)**
  16:10
**original (2)**
  10:13;12:7
**OSC (2)**
  5:21;16:20
**out (4)**
  9:5;10:20;13:8;
  20:18
**over (6)**
  4:18;18:14,15;
  21:7,11,17

**P**

**page (1)**
  15:8
**painstaking (1)**
  9:4
**paper (1)**
  11:1
**papers (3)**
  4:14;7:1;16:25
**part (3)**
  8:9,18;10:4
**participate (1)**
  12:1
**parties (1)**
  11:22
**patience (1)**
  19:6
**patiently (1)**
  21:21
**pay (6)**

16:13;18:12;
  19:25;20:2,24;21:3
**per (1)**
  15:8
**period (4)**
  5:13;6:2,12;12:4
**place (1)**
  5:22
**plaintiff (11)**
  4:22;16:19;17:1;
  18:14,18;19:10,13;
  20:3,13;21:6,6
**plaintiffs (2)**
  4:9;15:19
**Plaintiff's (1)**
  4:5
**planned (1)**
  18:24
**please (2)**
  4:6;18:10
**pm (1)**
  4:1
**point (1)**
  13:11
**points (1)**
  21:15
**position (1)**
  14:13
**postage (4)**
  6:17,17;7:5;16:21
**practice (1)**
  7:23
**prayed (1)**
  18:25
**praying (1)**
  19:22
**prejudice (1)**
  4:24
**prepare (3)**
  12:4;17:7;23:3
**prepared (2)**
  12:5,9,10
**present (3)**
  4:12;11:4;12:11
**prevent (1)**
  14:9
**preventing (1)**
  15:7
**previous (2)**
  19:16,21
**prior (2)**
  5:10;15:4
**private (1)**
  7:23
**probably (2)**
  19:6;21:2
**problem (1)**
  10:10
**procedural (2)**
  16:1,5
**Procedurally (1)**
  22:18
**procedure (2)**

7:15;16:4
**procedures (1)**
  8:14
**proceed (1)**
  16:6
**proceeding (4)**
  16:7;17:4;19:4;
  22:12
**proceedings (10)**
  8:3;9:7,20;10:25;
  11:2,5;15:25;16:2;
  20:6;23:7
**process (6)**
  7:19,19;9:8;10:11;
  12:2;15:23
**professional (1)**
  9:21
**Proposed (1)**
  6:25
**provide (2)**
  9:18;18:25
**provided (2)**
  9:11;13:9
**put (2)**
  5:10;8:11

**Q**

**quite (1)**
  12:14

**R**

**rates (2)**
  9:12,16
**re (1)**
  5:24
**read (3)**
  4:13;7:25;21:9
**real (2)**
  18:19;19:15
**realize (1)**
  21:5
**really (2)**
  16:8;21:2
**reason (1)**
  10:4
**reasonable (4)**
  7:7;9:12,16;15:9
**reasonably (1)**
  9:22
**recall (2)**
  11:21;14:7
**receive (1)**
  4:21,23;11:14
**received (4)**
  4:19,25;5:1;18:22
**record (8)**
  4:15,24;13:19;
  14:2;15:19;17:6;
  19:13;21:8
**records (1)**
  5:25

**recourse (1)**
  14:10
**reference (1)**
  15:21
**refused (1)**
  21:16
**regarding (5)**
  8:5,6;13:14;17:16,
  25
**regards (1)**
  14:14
**relate (1)**
  5:19
**related (4)**
  8:3,12;9:20;16:20
**released (1)**
  18:17
**relevant (2)**
  21:2,3
**reliance (1)**
  10:24
**remember (3)**
  10:17;13:24;20:1
**rendered (1)**
  19:11
**reply (2)**
  5:2;15:15
**representation (1)**
  8:11
**representing (1)**
  20:13
**reputation (1)**
  22:14
**request (4)**
  5:9;6:17;13:1;
  15:12
**requested (2)**
  7:11;9:19
**requesting (2)**
  8:14;9:14
**required (6)**
  4:21;11:3,11;12:1,
  4,13
**requiring (1)**
  10:19
**research (7)**
  8:6;9:12;13:10,14;
  15:6,7,8
**researched (2)**
  13:8;15:4
**resources (1)**
  14:24
**respect (3)**
  9:7;19:21;22:24
**response (2)**
  13:6,9
**responses (1)**
  13:5
**results (2)**
  9:23,24
**return (1)**
  11:22
**revenues (1)**

Case: 14-01018   Doc# 82-2   Filed: 10/28/20   Entered: 10/28/20 16:05:00
of 30

19:15
**review (1)**
5:25
**right (12)**
4:13;6:5,9,15;
8:16;10:23;11:4;
16:16;19:5;21:12;
22:13;23:3
**rights (1)**
18:21
**rules (1)**
4:22
**run (1)**
22:8

## S

**same (1)**
10:19
**San (1)**
19:8
**sanctions (2)**
10:14;13:1
**sat (2)**
20:11;22:15
**saw (1)**
8:17
**Second (1)**
13:12
**seeks (1)**
10:14
**send (1)**
10:8
**service (1)**
8:6
**SF (1)**
8:5
**show (4)**
5:24;10:14;11:25;
22:16
**showing (1)**
17:2
**shown (1)**
17:10
**side (1)**
7:13
**sign (7)**
11:7;13:17,20;
14:8;20:19;21:24,25
**signed (6)**
10:9;11:14;14:4,
12,25;22:2
**Simple (1)**
22:3
**simply (3)**
11:18;12:2;13:5
**Simultaneously (1)**
5:23
**single (1)**
9:6
**sit (1)**
18:8
**sitting (1)**

21:12
**six (2)**
9:9;21:19
**sixth (1)**
9:10
**sole (1)**
20:12
**Sometime (1)**
5:14
**somewhere (1)**
7:25
**sorry (2)**
17:22;18:6
**sort (2)**
5:22;12:16
**sounds (2)**
6:5,15
**specific (2)**
5:7;8:25
**specifically (2)**
5:10;13:24
**specify (1)**
7:10
**speculate (1)**
16:14
**speed (1)**
8:14
**spends (1)**
14:20
**spent (1)**
21:7
**split (1)**
22:6
**stand (3)**
12:6;18:10,11
**started (1)**
5:11
**starting (1)**
4:16
**state (1)**
4:6
**stated (2)**
19:13;20:8
**statement (4)**
17:16,25;21:17,19
**stating (2)**
18:23;21:22
**statute (1)**
7:7
**stay (1)**
14:3
**stayed (1)**
13:4
**Stephan (1)**
4:8
**stepped (1)**
19:8
**still (2)**
10:15;13:4
**stop (5)**
14:16,21;20:18;
21:8,8
**stuffed (1)**

11:18
**Submitted (6)**
16:16,17,25;17:19,
20;18:7
**submitting (1)**
17:14
**substantiate (1)**
12:11
**substantive (1)**
9:1
**sufficient (1)**
17:2
**supposed (1)**
20:20
**supposedly (2)**
13:7;15:7
**sure (2)**
9:13;15:11

## T

**tactic (1)**
10:16
**tactics (2)**
10:6;12:24
**talk (1)**
10:10
**talking (1)**
5:13
**telling (1)**
21:22
**ten (1)**
15:8
**tenth (1)**
9:5
**testimony (2)**
12:6;18:25
**thick (1)**
7:2
**thinking (1)**
8:17
**Thompson (7)**
4:4;15:3;20:14,14,
18;22:5,6
**thought (6)**
7:24,25;12:5;
17:18;18:6,7
**thoughts (1)**
20:2
**thousand (3)**
14:3;19:19;20:12
**throw (1)**
10:3
**Thursday (1)**
4:1
**today (1)**
14:4
**told (2)**
13:19;20:17
**took (2)**
20:6;21:17
**total (4)**
6:1,13;8:21;9:19

**touch (1)**
12:17
**trampled (1)**
18:21
**travesty (1)**
19:24
**treated (2)**
19:20;22:3
**trial (1)**
4:3;18:22;21:18
**tried (2)**
7:11;10:7

## -

**-troub (1)**
6:12

## T

**trying (2)**
5:21;7:22
**two (4)**
15:9;18:15;19:13,
17

## U

**Ultimately (1)**
11:19
**unable (1)**
21:3
**unaltered (2)**
10:8;11:8
**unbelievable (1)**
20:22
**under (3)**
4:21;8:11;19:14
**undisclosed (1)**
21:11
**unfair (1)**
19:11
**unfairly (1)**
22:3
**unfortunately (1)**
14:24
**unreasonable (1)**
15:12
**up (4)**
8:14;10:11;11:25;
22:16
**upon (1)**
16:24
**upset (1)**
22:20
**used (1)**
8:16

## V

**versus (1)**
4:4

## W

**wait (1)**
22:8
**waited (1)**
18:15
**waiting (1)**
21:21
**waiver (1)**
20:20
**warrant (1)**
12:2
**way (3)**
8:11;10:23;14:22
**Wells (1)**
21:13
**well-versed (1)**
13:16
**weren't (1)**
15:20
**What's (2)**
10:21;21:10
**whatsoever (3)**
12:17,25;13:2
**wherewithal (1)**
20:24
**whole (2)**
7:19;20:6
**William (1)**
20:17
**Winetroub (8)**
4:9,10;6:8,8,11;
8:10,22
**Winetroup (1)**
6:10
**Wired (1)**
19:15
**wish (4)**
5:4;8:25;15:15;
17:23
**without (1)**
22:24
**woes (1)**
20:25
**word (2)**
6:14;8:7,17
**work (3)**
8:22;9:24;12:13
**working (3)**
19:14;20:15;21:13
**writ (3)**
14:14,22,22
**writing (1)**
19:17
**wrong (2)**
8:17;14:20

## Y

**year (1)**
19:16
**years (7)**

Case: 14-01018    Doc# 82-2    Filed: 10/28/20    Entered: 10/28/20 16:05:00    Page 29
of 30

15:12;18:15,15;
19:10,14,18;22:21

## 1

**1 (1)**
4:4
**1.7 (1)**
6:1
**120 (2)**
21:17,18
**13th (1)**
11:21
**16 (1)**
15:12

## 2

**2.1 (2)**
8:5,21
**2.5 (1)**
16:22
**2:25 (1)**
4:1
**2:53 pm (1)**
23:7
**2009 (1)**
19:9
**2011 (1)**
19:17
**2013 (1)**
21:20
**2015 (2)**
5:17;16:22
**2016 (1)**
4:1
**25th (1)**
16:22

## 3

**300- (1)**
21:8
**37 (1)**
21:15

## 4

**4 (1)**
4:1
**429 (1)**
6:12

## 5

**50 (1)**
20:3
**50,000 (1)**
21:4
**514980 (1)**
4:5

## 6

**60 (1)**
20:3
**60,000 (1)**
21:4
**624,000 (1)**
21:6
**64 (1)**
9:19

## 7

**70 (1)**
21:4

## 8

**8/25 (1)**
8:20
**8/25/15 (1)**
8:4
**85/15 (1)**
22:6
**880,000 (1)**
19:17

## 9

**9th (2)**
13:20;14:6

Case: 14-01018   Doc# 82-2   Filed: 10/28/20   Entered: 10/28/20 16:05:00   Page 30
of 30