

The following constitutes the order of the Court.
Signed: December 16, 2020

_____
**Charles Novack
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>DEAN GREGORY ASIMOS,<br><br>    Debtor. | Case No. 11-13214<br><br>Chapter 7 |
| JASON EVERETT THOMPSON,<br><br>    Plaintiff,<br><br>vs.<br><br>DEAN GREGORY ASIMOS,<br><br>    Defendant. | Adversary No. 14-1018 CN<br><br>**REVISED AND FINAL ORDER PARTIALLY GRANTING AND PARTIALLY DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

    On November 4, 2020, this court conducted a hearing on cross-motions for summary judgment filed by plaintiff Jason Everett Thompson and defendant Dean Gregory Asimos. All appearances were noted on the record. This court thereafter issued an order that partially granted and partially denied the cross-motions, and ordered the parties to submit supplemental declarations under Federal Rule of Bankruptcy Procedure 7056(e)(1). The parties having filed their supplemental declarations and the court having considering them, the following constitutes this court's revised and final order.

    Thompson and Asimos seek a determination regarding the dischargeability of attorneys' fees

awarded to Thompson in the parties' San Francisco County Superior Court litigation. The gist of their argument is not based, however, on the dischargeability provisions of Bankruptcy Code §523; instead, the parties disagree regarding whether the fee awards - which all stem from pre-petition business dealings - are pre or post-petition obligations.

This dispute is ripe for summary adjudication. Thompson and Asimos have stipulated to a set of undisputed facts [Docket Entry #73], which this court fully incorporates herein and summarizes as follows:

Thompson and Asimos were engaged in a niche real estate business as broker (Asimos) and real estate agent (Thompson) who ultimately found themselves at odds over the operation of their business venture and, in particular, their individual interest in a substantial real estate commission arising out of their business dealings. The real estate commission itself was subject to pre-petition litigation between Thompson/Asimos and the client, which the parties settled. Thompson and Asimos disputed, *inter alia*, who was entitled to the settlement proceeds (the amount of which is approximately $100,000, the "Settlement Proceeds"), and on October 10, 2011, Thompson commenced litigation against Asimos in San Francisco County Superior Court to establish his interest in the Settlement Proceeds and recover other business related damages. Thompson and Asimos were parties to a form "Independent Contractor Agreement (Between Broker and Associate-Licensee)" which contained an attorney fee clause that entitled the prevailing party in any litigation arising from or related to the agreement to recover his reasonable attorney's fees and costs.

Unbeknownst to Thompson, Asimos filed a Chapter 13 bankruptcy on August 29, 2011 to address debts unrelated to the parties' business disputes. While Asimos' Chapter 13 bankruptcy filing should have stayed the Superior Court action, Asimos failed to inform Thompson of his bankruptcy filing. Instead, Asimos answered Thompson's complaint on November 30, 2011 and asserted substantial cross-claims in which Asimos proclaimed his own rights to the Settlement Proceeds.[1] Thompson did not learn about Asimos' bankruptcy filing until well into the litigation,

---

[1] Like Thompson, Asimos asserted several causes of action that went beyond the dispute over the Settlement Proceeds. Each of the parties' causes of action arose, however, from their real estate business.

and the parties eventually stipulated to relief from the automatic stay to proceed with the Superior Court action.[2] The Superior Court litigation proceeded to trial, and on August 23, 2013, the Superior Court entered judgment in Thompson's favor, awarding him $450,038.00 in business damages (the "Business Damages Judgment"), $181,250.00 in attorney's fees and costs (the "Contract Attorney Fee Award"), and requiring Asimos to fully release any alleged interest in the Settlement Proceeds (the "Settlement Proceeds Award"). Asimos' claims were rejected in full.

Meanwhile, Asimos was struggling to make his monthly Chapter 13 plan payments, and on October 10, 2013, Asimos converted his Chapter 13 case to Chapter 7. His Chapter 7 discharge was issued on May 19, 2014 and his Chapter 7 case was closed as a no-asset case on July 11, 2014. The court takes judicial notice under Federal Rule of Evidence 201(b) that while Asimos listed the Superior Court litigation on his Statement of Financial Affairs, he did not list his cross-claims on his bankruptcy schedules.

Notwithstanding the conversion to Chapter 7, Asimos, on October 23, 2013, appealed the Business Damages Judgment, the Contract Attorney Fee Award and the adverse findings regarding his cross-claims. After due consideration, the California Court of Appeals issued an order on December 15, 2016 that affirmed the Superior Court's liability findings but remanded for a further determination of Thompson's damages. Upon their return to Superior Court, Thompson and Asimos filed motions for the attorney's fees and costs that they incurred on appeal. By order entered June 7, 2017, the Superior Court awarded Thompson $74,911.50 in fees and costs and denied Asimos' fee request (the "First Appeal Attorney Fee Award").

While Asimos' appeal was pending, Thompson sought to enforce the Settlement Proceeds Award and compel Asimos to sign a release of his interest in the Settlement Proceeds. Asimos refused to sign an appropriate release, and Thompson filed contempt proceedings against Asimos in August 2015, which resulted in the Superior Court holding Asimos in contempt on November 13, 2015 and awarding Thompson $62,785.37 in attorneys fees and costs related to the contempt

---

[2] Asimos avers that he informed his state court counsel of his bankruptcy filing, and that she was at fault for not timely informing Thompson.

3

proceeding (the "Contempt Fee Award"). Unlike Thompson's previous fee awards (which were awarded under the contractual attorney's fee clause), the Superior Court awarded the Contempt Fee Award under its statutory contempt powers (*see* California Code of Civil Procedure §§1209 *et seq*, and specifically, California Code of Civil Procedure § 1218(a)). Asimos unsuccessfully appealed the contempt judgment and Contempt Fee Award, and in February 2019, the Superior Court awarded Thompson an additional $55,808.20 in fees incurred in defending the contempt judgment and Contempt Fee Award on appeal (the "Contempt Appeals Fee Award").

Thompson's first amended complaint in this adversary proceeding seeks to determine the dischargeablity of the above fee awards. Thompson contends that the fee awards are post-petition claims because he was compelled to incur them after Asimos filed his Chapter 13 (and in some instances after Asimos' conversion to Chapter 7). Thompson insists that Asimos' litigation of his cross-claims and refusal to comply with the Settlement Proceeds Award constituted a "return to the fray" and place these attorney's fee awards beyond the pale of Asimos' Chapter 7 discharge. Asimos disagrees, and moreover seeks to shift legal responsibility for these fees to his Superior Court counsel.

The summary judgment standard under Federal Rule of Bankruptcy Procedure 7056 is well established. A party is entitled to summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The trial court does not weigh the evidence but merely determines whether material facts remain in dispute. This court must also draw all reasonable inferences in favor of the non-moving party. A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 1997).

The movant has both the initial burden of production and the ultimate burden of persuasion on his summary judgment motion. *Nissan Fire & Marine, Ins. Co., Ltd. v. Fritz Cos.*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). The movant meets this burden either by negating an essential element of the opposing party's claim for relief or by showing that the opposing party does not have enough evidence of an essential element to carry his ultimate burden of persuasion at trial. *Nissan Fire &*

*Marine Ins., Co., Ltd. v. Fritz Cos., Inc.*, *supra*, 210 F.3d at 1102. As stated above, much of this court's factual scrutiny was resolved by the parties' stipulated facts.

**LEGAL ANALYSIS**

**A. The Fair Contemplation Test and the Contract Attorney Fee Award**

The issue of when a claim arises under the Bankruptcy Code is a question of federal law. *Camelback Constr. v. Castellino Villas, A.K.F. LLC (In re Castellino Villas, A.K.F. LLC)*, 836 F.3d 1028 (9th Cir. 2016). Whether a claim exists is generally determined as of the petition date. *See* Bankruptcy Code § 502(b)(1); *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826,838 (9th Cir. 2009). The significance of this issue is paramount, because the Chapter 7 discharge "releases the debtor from personal liability for . . . pre-petition debts." *Boeing N.Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1022 (9th Cir. 2005). The question before this court is whether the Contract Attorney Fee Award is a pre-petition debt.

Under the Bankruptcy Code, a debt is a liability on a claim, and the latter term is broadly defined to mean "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secure, or unsecured. . . ." 11 U.S.C. § 101(5)(A). "A claim is 'contingent' when 'the debtor will be called upon to pay [it] only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" *In re Castellino Villas*, 836 F.3d 1028,1033. "A claim is 'unliquidated' when it is not 'subject to ready determination and precision in computation of the amount due.'" *Id*. The Bankruptcy Code broadly defines these terms to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re SNTL Corp*., 571 F.3d 826, 838 (quoting *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929-30 (9th Cir. 1993)).

The Contract Attorney Fee Award arises from a pre-petition contractual attorney's fee clause between Asimos and Thompson. While this contractual remedy existed when Asimos filed his Chapter 13, Thompson had not yet commenced his litigation against Asimos and thus had not incurred nor been awarded any fees under it. Instead, he incurred all of his attorney's fees in litigation that he commenced after Asimos filed his Chapter 13 bankruptcy. In instances such as this,

5

the Ninth Circuit has routinely held that even though the fees are generated post-petition, they constitute a pre-petition, contingent claim because they could be "fairly contemplated" by the contracting parties on the bankruptcy petition date. "Postpetition fees can be fairly contemplated when the parties have provided for them in their contracts and thus are contingent claims as of the petition date. They cannot be disallowed merely because they are contingent. As stated by one leading commentator: 'In general, if the creditor incurs the attorneys' fees postpetition in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred.'" *In re SNTL Corp.*, 571 F.3d 826, 844. The Ninth Circuit in *In re Castellino Villas,* 836 F.3d 1028, 1034, provides a more expansive explanation of the "fair contemplation" doctrine.

> "We have recognized that under some circumstances, a creditor may have a claim against a debtor for attorneys' fees, even though the creditor has not yet incurred those fees. For instance, where the debtor and creditor have entered into a contract that includes an attorneys' fees agreement, the creditor may be deemed to have a contingent claim for payment of attorneys' fees even before any fees are incurred. See id. at 843 & n.18 ("[W]hen a creditor's right to payment for fees exists prepetition [in a Chapter 7 case], the right to payment constitutes a 'claim,' within the meaning of § 101(5)(A), albeit an unliquidated, unmatured claim." (quoting *In re New Power Co.*, 313 B.R. 496, 508 (N.D. Ga. 2004)). Such a contingent claim would then include attorneys' fees incurred during and after the bankruptcy case. "In general, if the creditor incurs the attorneys' fees postpetition [in a Chapter 7 case] in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred." *Id*. at 844 (quoting 5 Collier on Bankruptcy § 553.03[1][I] (15th ed. Updated 2007)). Said otherwise, when the creditor had a prepetition contingent claim for attorneys' fees, even attorneys' fees incurred after that date may be discharged in bankruptcy. In determining whether a creditor's claim arose prepetition, we use the "fair contemplation" test. Under this test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Id*. at 839; *see also In re Jensen*, 995 F.2d at 930-31. For instance, in *Jensen* we held that when a state environmental regulatory agency was aware that the groundwater at the debtors' site was seriously contaminated before the debtors filed a bankruptcy petition, a contingent claim for cleanup costs was in the "fair contemplation" of the state at the time the debtors filed their Chapter 7 petition. *Id*. The state's claim for cleanup costs was therefore discharged in bankruptcy, even though the state incurred nearly a million dollars in cleanup costs after the discharge. *Id*. Accordingly, if a creditor and debtor are engaged in prepetition litigation pursuant to a contract that includes an attorneys' fees provision, and the creditor "can fairly or reasonably contemplate" that it will have a claim for attorneys' fees if an "extrinsic event" occurs (that is, if it prevails in the litigation), then the creditor's claim for attorneys' fees will be discharged in the debtor's bankruptcy even if the creditor incurs attorneys' fees after the debtor was

6

discharged. [citations omitted.]

This court's analysis would appear, then, to be straightforward. Thompson's claims against Asimos pre-dated the Chapter 13 filing. He commenced litigation against Asimos after the Chapter 13 petition date, prevailed in that litigation and was awarded his fees as the prevailing party under the attorney's fees clause. Under *SNTL* and *Castellino Villas*, these fees should have been fairly contemplated by Thompson as of the Chapter 13 petition date, and as such, are subject to Asimos' discharge. In fact, Thompson concedes that the Business Damages Judgment - which was awarded post-petition - is a pre-petition, dischargeable debt. Yet, as to the Contract Attorney Fee Award, Thompson contends otherwise. He asserts that while he voluntarily commenced the litigation against Asimos, he was forced to defend against Asimos' cross-claims, and the fees related to his defense (which he has not separately identified for the court's benefit) could not be fairly contemplated. Thompson seeks to invoke what is known as the "return to fray" exception to the fair contemplation doctrine, which the *Castellino Villas* court describes as follows:

> "Despite the breadth of [the fair contemplation] rule, attorneys' fees incurred by a creditor pursuant to an agreement will not always be in the "fair contemplation" of the parties. *See, e.g.*, *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525; *see also In re Ybarra*, 424 F.3d 1018. *In Siegel*, the debtor defaulted on two real estate loans and then filed a bankruptcy petition. 143 F.3d at 527. The lender's claims were resolved in the bankruptcy, and the debtor received a discharge. *Id.* But the debtor subsequently brought a lawsuit in state court (later removed to federal court) against the lender, arguing that the lender breached the deed of trust. *Id.* at 527-28. The district court granted the lender's motion for summary judgment, and the court awarded the lender attorneys' fees pursuant to the deed of trust. *Id.* at 531. We affirmed, rejecting the debtor's argument that his discharge in bankruptcy included the lender's claim for attorneys' fees. *Id.* at 533. We reasoned that a claim for attorneys' fees is a contingent claim only where the potential for incurring post-discharge liability was contingent "upon what others might do" and "entirely out of [the debtor's] hands before he entered bankruptcy." *Id*. But where the debtor voluntarily undertook a new course of litigation, which we described as a decision "to return to the fray," *id*. at 533, any new liability for attorneys' fees constituted a post-discharge cost. *Id*.
>
> We addressed a similar situation in *Ybarra*. In that case, a debtor first brought a suit for employment discrimination against her employer in state court. 424 F.3d at 1020. Some eight months later, the debtor filed a Chapter 11 bankruptcy petition, which was subsequently converted to Chapter 7. *Id*. The trustee for the debtor's bankruptcy estate negotiated a settlement agreement with the employer, which was approved by the bankruptcy court. *Id*. The state court then dismissed the lawsuit. *Id*. Despite the dismissal of the lawsuit, the debtor took affirmative actions "to revive the state suit." *Id*. at 1020, 1027. The debtor claimed her cause of action against the employer constituted exempt property, litigated this issue in bankruptcy court, and (after prevailing on appeal), rejected the settlement agreement and "successfully persuaded

7

the state court to set aside the dismissal." *Id*. at 1020. The debtor lost in state court and the employer was awarded attorneys' fees and costs. *Id*. at 1020-21. Because the bankruptcy court had previously granted the debtor a discharge, the employer moved the bankruptcy court for leave to enforce the state award of fees and costs. *Id*. at 1021. The debtor claimed the award was discharged in bankruptcy. *Id*.

We disagreed. Following *Siegel*, we noted that "the award of post-petition attorney fees was not discharged" where the debtor returned to the fray by engaging in the "initiation of new litigation" post-petition. *Id*. at 1023-24 (citing *Siegel*, 143 F.3d at 534). We concluded that "post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily pursue[d] a whole new course of litigation, commenced litigation, or return[ed] to the fray voluntarily." *Id*. at 1024 (alterations in original) (internal quotation marks omitted). We therefore rejected the debtor's argument that the state lawsuit "should be considered continuous litigation, rather than the commencement of a new suit post-petition," and we instead concluded that the debtor's "actions to revive the state suit were sufficiently voluntary and affirmative to be considered 'returning to the fray.'" *Id*. at 1027; *see also In re Sure-Snap Corp.*, 983 F.2d 1015, 1018-19 (11th Cir. 1993) (holding that when a debtor's liabilities under an agreement were discharged in bankruptcy, but the debtor challenged the validity of the agreement through a post-discharge appeal "initiated" by the debtor, the debtor can be held liable for attorneys' fees under the agreement).

The analysis in these cases is consistent with our fair contemplation test. When parties engage in prepetition litigation that could lead to an award of attorneys' fees, they may fairly contemplate that the prevailing party will be awarded those fees. Therefore, a creditor's contingent claim to such fees is discharged in bankruptcy, even if some fees are incurred post-petition. But when the prepetition litigation is resolved in bankruptcy so that any claim (including a contingent claim for attorneys' fees) against the debtor would be discharged, we cannot say that the debtor's affirmative action to commence what amounts to "a whole new course of litigation," *Siegel*, 143 F.3d at 534, was in the fair contemplation of the parties when the debtor filed a bankruptcy petition. Rather, the debtor's decision to eschew the fresh start provided by bankruptcy and engage in new litigation is more akin to post-petition conduct that, by definition, was not in the fair contemplation of the parties prepetition. *Cf. O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) (holding that a debtor who engages in postpetition illegal discriminatory conduct can be held liable for that conduct, even if claims for similar illegal discriminatory conduct occurring before the bankruptcy were discharged)."
*In re Castellino Villas,* 836 F.3d 1028, 1034-36.

The Contract Attorney Fee Award does not fall within this exception. Thompson incurred these fees in prosecuting his Superior Court causes of action and defending against what appear to be Asimos' compulsory cross-claims. *See* California Code of Civil Procedure §§ 426.10 *et seq*. Parties should fairly contemplate that a Superior Court defendant will assert compulsory cross-claims, and the filing of such cross-claims in this instance hardly constitutes a new course of litigation that can be characterized as "returning to the fray." Moreover, Thompson does not explain how this court can distinguish between the fees that he incurred in prosecuting his affirmative claims (which even Thompson must concede should be treated akin to the discharged Business Damages Award) and

8

those incurred in defending against Asimos' cross-claims. *See*, *e.g.*, *In re Bartenwerfer*, 6143. B.R. 730 (Bankr. 9th Cir. 2020).

More importantly, even if Thompson is correct in arguing that at least those fees incurred in defending against the cross-claims were not fairly contemplated, these fees were incurred before Asimos converted to Chapter 7. The conversion to Chapter 7 transformed these fees to a pre-petition claim under Bankruptcy Code § 348(d). Accordingly, Thompson's motion for summary judgment with regard to the Contract Attorney Fee Award is denied, Asimos' motion as to these fees is granted, and the Contract Attorney Fee Award is discharged.

**2. First Appeal Attorney Fee Award.**

These fees present a more thorny question. It was Thompson who initiated the Superior Court litigation, which required Asimos to assert (or forfeit) his cross-claims.[3] Thompson concedes that his Business Judgment Award is a pre-petition claim, and it can be fairly contemplated that the losing party in litigation will appeal not only the affirmative judgment against him but also the denial of any recovery under his cross-claims. In many instances, the two are closely intertwined. The difficulties here are that Asimos did not disclose his cross-claims on his bankruptcy schedules, filed the appeal after he converted to Chapter 7 and continued to prosecute his appeal well after he received his Chapter 7 discharge.[4] In fact, it appears that Thompson incurred the bulk of his appellate fees after Asimos received his Chapter 7 discharge.[5]

---

[3] While Asimos should have informed Thompson of his bankruptcy and the accompanying automatic stay, Thompson voluntarily agreed to proceed with the Superior Court litigation by stipulating to relief from the automatic stay. His decision to do so made economic sense, since the parties' disputes otherwise would have been resolved in the claims process and by adversary proceeding. *See*, *e.g.*, Federal Rule of Bankruptcy Procedure 3007(b).

[4] Which raises the very substantial issue of whether Asimos had standing to appeal the judgment against the cross-claims. Since Asimos did not disclose his cross-claims on his bankruptcy schedules, there was no technical abandonment of these claims under Bankruptcy Code § 554(b) when his Chapter 7 was closed. *See In re Stevens*, __ B.R. __, 2020 WL 3607438 (Bankr. 9th Cir. 2020).

[5] While Asimos filed his notice of appeal on October 23, 2013, he did not file his opening brief until October 24, 2014, and filed his reply brief on January 12, 2015. The supplemental declarations indicate that Thompson incurred most of his fees on appeal well after the entry of

Asimos' conversion to Chapter 7 placed the Chapter 7 trustee in control of his cross-claims, which were property of his Chapter 7 bankruptcy estate under Bankruptcy Code § 541(a). His Chapter 7 discharge freed him from any liability on the Business Damages Judgment and the Attorney Contract Fee Award. Rather than allowing the Chapter 7 trustee to administer (or properly abandon) the cross-claims, he continued to pursue them on appeal even after he received his discharge. Rather than enjoy the benefits of his Chapter 7 discharge, he continued to pursue his appeal of the affirmative judgements against him. Such conduct constitutes a return to the fray, as it was Asimos' decision to continue these appeals. As the *Ybarra* Court noted, debtors may not use the bankruptcy "discharge shield . . . as a sword . . . to undertake risk-free litigation at other's expense." *In re Ybarra*, 424 F.3d 1018,1026.

Thompson asks this court to find that the First Appeal Fee Award is not subject to Asimos' Chapter 7 discharge. As discussed above, the entry of the discharge appears to be the salient date when Asimos truly returned to the fray, and the supplemental declarations indicate that $1,537.00 of the First Attorney Appeal Award was incurred pre-discharge. Asimos argues that a substantial portion of the post-discharge fees were incurred in preparing Thompson's motion to dismiss the appeal, and that these fees should be subject to his discharge. He also questions the reasonableness of Thompson's fees and whether they should have been awarded at all, given the First Appellate District's order that the parties were "to bear their own costs of appeal." Neither argument is persuasive. Had Asimos voluntarily dismissed his appeal after he received his discharge, there would have been no need for Thompson to move for its dismissal. Asimos assumed the risk of being held liable for Thompson's appellate fees when he failed to dismiss his appeal. As to the reasonableness of these fees, this court may only determine the *dischargeability* of these fee orders, and cannot review their merits.

Accordingly, the court finds that $73,374.00 of the First Appeal Award is not subject to Asimos' Chapter 7 discharge.

**3. The Contempt Fee Awards**

---

Asimos' discharge.

10

The Contempt Fee Award and Contempt Appeal Fee Award are post-petition claims that are not subject to Asimos' Chapter 7 discharge. The question is not who is to blame for the contempt proceedings (because regardless, these fee awards were entered against Asimos), but whether they constitute pre or post-petition claims. As stated by the *Castellino Villas* court, "[t]he pertinent question is whether the right to obtain attorneys' fees in the litigation is within the fair contemplation of the parties,"[6] and in this instance the rights contemplated arose from a pre-petition contract. In contrast, the contempt fee awards arose from a quasi-criminal proceeding under California Code of Civil Procedure §§ 1209 *et seq.*, where the Superior Court compelled Asimos to comply with its own order. The Superior Court was not litigating the merits of the parties' pre-petition contractual rights, but addressing Asimos' post-petition refusal to comply with a court order. The contempt fees thus fall well outside of *In re Castellino Villa's* holding. Accordingly, this court holds that the Contempt Fee Award and Contempt Appeal Fee Award are not subject to Asimos' Chapter 7 discharge.

Thompson also argues that the Contempt Fee Award and Contempt Appeal Fee Award are non-dischargeable under Bankruptcy Code § 523(a)(6). The court rejects this argument for the simple fact that the Contempt Fee Award and Contempt Appeal Fee Award are post-petition claims, not pre-petition claims. Only pre-petition claims are subject to the dischargeability provisions of Bankruptcy Code § 523(a)(6).

Thompson shall prepare a judgment consistent with this order.

**\* \* \* END OF ORDER \* \* \***

COURT SERVICE LIST

Recipients are ECF participants

---

[6] *In re Castellino Villas*, 836 F.3d at 1037.

ORDER
Case: 14-01018    Doc# 88    Filed: 12/16/20    Entered: 12/16/20 14:30:02    Page 12 of 12